GROTH et al. v. INTERNATIONAL POSTAL SUPPLY CO.

(Circuit Court of Appeals, Second Circuit. April 19, 1894.)

No. 121.

1. INTERPRETATION OF PATENTS—PIONEER INVENTIONS.
    The fact that an invention is of a primary character does not warrant a construction of the patent which does away with restrictions imposed by the language of the claims themselves.

2. SAME—INFRINGEMENT—MAIL-STAMPING APPARATUS.
    The Hey patents, Nos. 341,380 and 388,366, for improvements in mail-stamping apparatus, construed, and *held* not infringed. 57 Fed. 658 reversed.

Appeal from an interlocutory decree of the circuit court for the southern district of New York, which decreed in favor of the complainant in a bill in equity to restrain the infringement of the second and third claims of letters patent of the United States No. 341,380, dated May 4, 1886, and of the first and third claims of letters patent No. 388,366, dated August 21, 1888. Each patent was for improvements in mail-stamping apparatus, and each was granted to George W. Hey and Emil Laas, assignors to the complainant.

Rowland Cox, for appellants.
George W. Hey, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The inventions which are the subject of the two patents, and which were made by the same inventors, are machines for automatically postmarking and canceling the stamps upon mail matter. The original specification which accompanied the application for the earlier patent described both electrical and mechanical means for actuating the stamp or marker. At the request of the patent-office examiner, the application was divided, and a new one was filed on June 2, 1884, which was confined to purely mechanical means for releasing the stamp. This application was thrown into interference with the application of M. V. B. Ethridge, and the issuance of the second patent was delayed until August 21, 1888. The 18 claims of No. 341,380 describe a machine of a very ingenious character. Other automatic stamp-canceling machines had existed, but this machine first made the letter, moving upon the supporting bed, to be the means which brought into operation the stamping mechanism, so that the stamp should necessarily descend upon and mark the letter, and should not come in contact with and smear the supporting bed when the presence of a letter was for any reason delayed. In previous machines the letter did not exercise control over the stamp or marker, which was or might be in action, although no letter was present to receive the impression, so that ink was deposited on the face of the supporting bed, and in consequence the letters which subsequently made their appearance were defaced.

The following general description of that portion of the mechanism which is especially referred to in the two claims which are said to have been infringed is condensed from the specification of the patent: The letters, having been introduced into a suitable channel, are carried successively along a bed by means of a belt or suitable rollers. In this movement they encounter an actuating barrier, called in the patent a "rake," and this engagement causes the rake to be drawn along with the movement of the letter. This movement of the rake is utilized to control the action of the marker or stamp, which is accomplished by connecting with the rake a suitable tripping device, which throws into action a temporarily restrained motor, adapted to actuate the marker so that the stamp is forced downward, and caused to mark the letter. The pressure of the stamp, while the rake is lifted by a cam, releases the letter, the

rake is carried back to its normal position, and the electric circuit is broken. The second and fourth claims are as follows:

"(2) An automatic marking or stamping apparatus, comprising a bed for supporting the article to be marked, a marking stamp, supported opposite said bed; an actuating barrier or selecting feeler, arranged to be encountered by the article passing over said bed, and transmitting motion to the marking stamp,—substantially as set forth."   "(4) In combination with a letter-supporting bed, a carrier for moving the letter over the bed, a stamp or marker, and a mechanical engaging finger to engage the moving letter, and transmit motion to the stamp or marker, substantially as described."

The defendants' machine contains a bed, a stamp, and means to prevent the stamp from striking on the bed, and inking it, when no letter is present. These means are briefly described in the appellants' brief as follows:   They consist—

"Of a swinging foot, which is attached to a crank shaft that passes through the shaft of the stamp, and which is actuated by a stationary foot or tripper. In the bed immediately below the stationary foot a slot or hole is cut.   When the letter is on the bed, under the stamp, the slot or hole is covered by the letter, and the foot or tripper strikes it, whereby the swinging foot is lifted, thus permitting the stamp to deliver an impression.   When no letter is present on the bed, the foot or tripper enters the slot or hole, whereby the swinging foot, occupying a vertical position, strikes the bed, and prevents the stamp from coming in contact with it."

No. 388,366 describes a different method of carrying into effect the principle of No. 341,380.   The letter, while it is in transit on and over a supporting bed, comes in contact with what the specification calls "selecting devices," or "mechanical fingers or feelers," which are so shaped as to engage readily with the sealed flaps of the envelopes.   Through the medium of pivoted connections, motion is transmitted from the "selecting device" to a lever, and the stamp is released, and comes in contact with the advancing letter.   The specification says:

"The operation of the invention will be readily understood from the description of the invention and of the functions of the various parts; and it is only necessary to call attention to the fact that the stamping mechanism is normally at rest in a set position, and that, when the letter is presented, the selecting devices mechanically feel its surfaces, and engage the overlapping or sealed edges thereof.   The movement of the letter while the selecting devices are engaged causes the selecting devices to move toward the center of the stamping apparatus, carrying with them the connections which transmit the motion of the selecting devices to the releasing catch of the stamp roller.   The stamp roller when released is forced by its depressing springs onto the letter, and the onward advance of the letter revolves the roller stamp, causing it to impress the requisite stamp on the letter, while the restraining mechanism is being raised in position to reset the roller stamp."

The first and third claims are as follows:

"(1) In a machine for stamping or marking mail matter, the combination, with the supporting feed bed, of a stamp normally out of the path of movement of the mail matter, and a stamp tripper or releaser normally in said path."   "(3) In a machine for marking or stamping mail matter, the combination, with a supporting feed bed, of a stamp normally out of the path of the movement of the mail matter, and a stamp tripper or releaser normally in said path, and opposite the letter bed, substantially as specified."

The question of infringement is the one which principally presents itself for examination in regard to each patent.

No. 341,380. The foundation of the complainant's argument in regard to infringement is the fact that the invention of this patent is a primary one, inasmuch as the idea of making the letter the instrumentality which should bring into action the stamp, and thus compelling the movement of the stamp to depend upon the movement of the letter, was first embodied in the patentees' machine. It is therefore insisted that the claims of the patent should have a liberal construction, and that the special devices described in the specification "are not necessary constituents of the claims." Machine Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299. This just principle is one that is well recognized; but another principle is, at the present stage of the patent law, of equal force, which is that the construction of the patent must be in conformity with the self-imposed limitations which are contained in the claims, or, in the language adopted in McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, "if the language of the specification and claim shows clearly what he [the patentee] desired to secure as a monopoly, nothing can be held to be an infringement which does not fall within the terms the patentee has himself chosen to express his invention." The specification of No. 341,380 describes a machine in which the letter moving forward meets in its path, and actuates, a finger which communicates motion to tripping mechanism, so that the stamp is released. In the Groth device the moving and descending finger comes in contact with a stationary letter, and the result is that the presence of the letter at rest under the descending finger permits the stamp to be operative. The position of the complainant, as stated by its expert, is that the defendants' machine infringes because the movement of the engaging device upon a stationary letter is merely a reversal of the movement in the patented invention, and the devices are equivalent, inasmuch as in each case the presence of the letter in position to make contact with the engaging device causes the release of the stamp. Mr. Durfee, one of the complainant's experts, is of the opinion that the requirement of the second claim in regard to the letter's transmitting motion is satisfied if the letter controls the motion of the marker, and that the requirement of the fourth claim in regard to the transmission of motion by the finger is satisfied by a finger which determines the motion of the marker. It is manifest that each claim requires that the barrier or finger shall be encountered by, or shall engage with, a moving letter in its passage over the bed, and that in the second claim the letter transmits motion to the marker, while in the fourth claim the finger transmits the motion. The construction which the complainant's experts place upon the limiting words in the claims possesses great elasticity. To "transmit motion" becomes synonymous with "permit motion" or "control the motion of," and in the fourth claim with "determine the motion of." While it is true that by the Groth device an equivalency of result is produced, the difficulty which the complainant encounters upon the question of infringement is that the patentees described, in the second and fourth claims, the devices in the form and peculiarities in which they are described in the specification and pictured in the drawings, and limited themselves

to a barrier or finger which intercepts a moving letter in its onward path, whereby the letter, through the medium of the finger, or the finger itself, transmits motion. By reason of these limitations the Groth device. escapes the charge of infringement.

No. 388,366. In view of the fact that No. 341,380 is a primary invention, the combinations described in the first and third claims of the later patent are unduly akin to those contained in the earlier one, unless they are severed by the relation of the tripper in No. 388,346 to the stamp. The distinction is that the finger is not of itself a tripper in the earlier patent, and is in the later patent a tripper which supports and releases the stamp. The earlier patent is for a stamping device in which the moving letter meets and actuates a finger in its path, which transmits motion to a tripper out of the path of the letter, so that the stamp is released. The later patent is for a stamping device in which the moving letter meets in its path, and actuates, a tripper which supports and directly releases the stamp out of the path of the letter. Reading into the two claims the requirement which is necessary to their safety, that the stamp tripper itself supports the stamp, the question is in regard to infringement. The complainant's expert regards it as immaterial that the defendants' tripper moves upon the letter, whereas in No. 388,366 the moving letter is carried against the tripper, "because in each case the presence of the letter and its contact with the tripper result in such a movement as to cause the stamp to be released and brought in contact with the letter." This is virtually saying that any machine which contains a supporting feed bed, a stamp normally out of the path of the letter upon the bed, and a tripper which comes in contact with the letter and opposite the letter, and which enables the stamp, by such contact, to come into position upon the letter, infringes the claims in controversy. Each claim requires that the tripper shall be normally in the path of the letter, and, when this language was used with reference to the machine described in the specification and shown in the drawings, it meant that the moving letter should meet and be intercepted by the tripper. But it is said by the complainant that the language is complied with when the tripper is normally in such a position as to make contact with the letter when it is upon the supporting bed, and that the tripper is normally in the path of the letter when the letter is present so as to encounter it. A tripper normally in the path of the letter does not naturally mean a tripper normally in a position where it can be brought in contact with a letter by another instrumentality than the letter itself. It means a tripper whose natural position, when at rest, is such that it is in the path of the advancing letter. Unless a court is to recede from the rule of construction of claims which the modern decisions of the supreme court have endeavored to impress upon the patent law of this country, the claims are to be construed in accordance with what must be regarded as their obvious meaning.

There is no infringement of No. 388,366, and the decree of the circuit court is, with costs, reversed.