INTERNATIONAL POSTAL SUPPLY CO. OF NEW YORK v. AMERICAN POSTAL MACHINES CO.

(Circuit Court, D. Massachusetts.  December 21, 1905.)

No. 1, 597.

PATENTS—INFRINGEMENT—STAMP-CANCELING MACHINE.

The Hey & Laass patent, No. 341,380, the Laass & Hey patent, No. 388,-366, and the Hey patent, No. 632,527, all for stamp-canceling machines of the type in which the letter actuates the printing mechanism, construed, and *held* not infringed.

In Equity.  On final hearing.

Hey & Parsons, for complainant.

Richardson, Herrick & Neave, for defendant.

COLT, Circuit Judge.  This suit is brought for the infringement of three patents for improvements in stamp-canceling machines, which are used in the post offices of the United States.  The parties to the suit are rival manufacturers of these machines.

The patents in controversy and the claims alleged to be infringed are as follows:

Hey & Laass, No. 341,380, applied for February 26, 1884, issued May 4, 1886; claim 4 in issue.

Laass & Hey, No. 388,366, applied for June 2, 1884, issued August 21, 1888; claims 1 and 2 in issue.

Hey, No. 632,527, applied for September 17, 1884, issued September 5, 1899; claims 1, 4, 27, and 44 in issue.

A stamp-canceling machine may be described in general terms as comprising a marking roller carrying the type, an impression roller which supports the letter during the printing, and feed mechanism which carries forward the letter to the printing point.

For the purpose of a clearer understanding of this case, these machines may be conveniently divided into two classes, those in which the letter does not control the printing, and those in which the letter does control the printing.

As an illustration of the first class of machine we may take an organization in which the two opposing printing rollers are continuously revolved in fixed bearings, with the result that, when the machine is in its normal condition, the printing mechanism is necessarily always in operation; in other words, the operation of the printing mechanism is unaffected by the presence or absence of a letter in the machine. There are two defects in this type of machine: First, the impression roller becomes smeared with ink from the marking roller, and consequently the backs of the letters are defaced; and, second, there is an imperfect registration of the printing die upon the mail matter.

In the second class of machines, in place of two printing rollers revolving in stationary bearings, we have an organization in which one of the rollers has a reciprocating movement.  In these machines the rollers are held apart when the machine is in its normal condition, and they are brought together, or into the position for printing, only

when a letter is presented to them to be marked. After the printing, the rollers are again separated until the next letter is presented. This organization prevents the inking of the impression roller, and secures the proper registration of the printing die upon the mail matter. The present suit relates to this type of machine.

The three patents in suit describe a stamp-canceling machine in which the letter controls the marking member. The first patent, Hey & Laass, No. 341,380, discloses one form of this machine, and the two remaining patents, Laass & Hey, No. 388,366, and Hey, No. 632,527, disclose another form of this machine. In both of these machines the marking member is practically separated from the rest of the machine, and it is moved into the position for printing by the movement of the letter as it is carried forward by the feed mechanism. In other words, we find in these patents the conception of a stamp-canceling machine in which the two printing members (the reciprocating marking member and the impression member) are fundamentally distinct organizations, employing in their operation two independent sources of power. In this dual organization, when the primary source of power is applied to the machine, or the machine is in its normal condition, the whole marking mechanism is at rest, and it is only when a letter moves along the bed of the machine that this mechanism is actuated. It is apparent that this conception throws upon the moving letter the work of setting in operation an independent marking organization.

Patent No. 341,380 shows the first form in which this conception is embodied. In this machine the movement of the marking member towards the impression member is effected by means of an electromagnet and connecting mechanism. The end of the moving letter comes in contact with and moves forward a finger, whose movement operates to close the circuit, thereby bringing together the two printing members. The marker in this machine is a flat stamp, and the printing is done by forcing the stamp down upon the moving letter. Whatever the degree of inventiveness shown in this machine, it proved a practical failure. No machine like this patent has ever been constructed except one model. With respect to the defects in this machine, it is only necessary to point out that the printing die in the operation of canceling the stamp descends at a right angle to the moving letter. Although this patent is the first in the art to describe a machine of this type, it did not solve the problem of a stamp-canceling machine in which the letter controls the printing.

The two remaining patents in suit, No. 388,366 and No. 632,527, disclose the other form in which the patentees embodied their conception of this type of machine. In this machine the movement of the marking member towards the impression member is effected by the action of a spring and connecting mechanism. When the machine is in its normal condition, the marking member is held away from the impression member against the pressure of this spring by means of a lever and catch. When, however, the end or forward part of the moving letter comes in contact with one end of this lever, the catch is released, thereby causing the action of the spring to bring together

the two printing members. Here the marker is a roller, and the printing takes place as the roller is revolved by the friction of the moving letter upon its surface.

This machine has not proved a commercial success. It is open to the objection of forcing upon the end of the moving letter the duty of releasing the marking roller against the spring pressure which moves the roller into the position for printing.

The principle of construction in both these machines is defective. No successful stamp-canceling machine, in which the letter controls the printing, ever has been constructed in which the end, or forward part, of the moving letter was called upon to set in operation a substantially independent marking mechanism actuated by an independent source of power, such as an electro-magnet or a spring.

The machines of these patents show ingenuity and afford valuable suggestions. They proved, however, impractical for commercial purposes; and they cannot therefore be said to have solved the problem of an efficient letter-actuated machine. The defects in these machines are not confined to details. They lie deeper in the very principle of their construction and mode of operation.

In the complainant's commercial machine the idea of a practically independent marking mechanism has been abandoned. The marking member is no longer mounted in an oscillating frame, and the complicated mechanism of the patents in suit has been simplified. The whole machine in fact is substantially a single organization actuated by one source of power. In this essential particular it is more like the old type of machine and the defendant's machine, than it is like the machines described in the patents in suit.

The defendants manufacture what is known as the Ethridge machine, since it closely resembles in construction the machine shown in the Ethridge patent No. 323,799, dated August 4, 1885. The Ethridge machine is founded upon the modification of the old type of machine by incorporating into it the reciprocating and letter-actuating features. In this machine the marking roller and the impression roller always revolve, and these rollers with their connecting mechanism are fundamentally and at all times a single co-acting organization operated from one source of power. The reciprocation of one of these rollers is provided for by suitable means. The rollers are also held apart until a letter is presented to them, when one of them moves towards the other into an operative position for printing. There is also provided a stop mechanism, which arrests and holds the moving letter until it can be properly presented to the die of the marking roller. Such stop mechanism is necessary, because the marking roller carrying the die is constantly rotated.

In the alleged infringing machine embodying this conception, the reciprocation of the impression roller is effected by means of a cam and connecting mechanism, and the printing rollers are held apart during the normal condition of the machine by means of a pivoted lever and a projection on the supporting yoke of the impression roller. The marking roller in this machine is provided with clamping feet, and there is a timing lever in the path of the moving letter. As the

letter is carried forward to the printing rollers by the feed mechanism, it is stopped and held by the timing lever until the clamping feet upon the revolving marking roller push it sidewise against the pivoted lever, thereby moving the end of the pivoted lever to one side of the projection on the yoke of the impression roller, when the two rollers are brought together by the action of the cam and connecting mechanism. The action of the cam is such that, at the time the end of the pivoted lever is moved to one side, there is no pressure of the projection on the impression roller yoke against the end of the lever. The lever, so to speak, is merely withdrawn from the path of the projection. This machine, as distinguished from those described in the patents in suit, has proved a practical success; and machines constructed on this principle were the first commercial machines installed in the post offices of the United States.

We come now to the consideration of the claims of the patents in suit which the defendant's machine is alleged to infringe. Claim 4 of the first patent, No. 341,380, reads as follows:

"In combination with a letter-supporting bed, a carrier for moving the letter over the bed, a stamp or marker, and a mechanical engaging finger to engage the moving letter and transmit motion to the stamp or marker, substantially as described."

The important element in this claim is the "mechanical engaging finger to engage the moving letter and transmit motion to the stamp or marker." In defendant's machine the moving letter does not engage a finger and transmit motion in any sense within the meaning of this claim. As we have seen, the moving letter comes to a stop; it is then pushed sidewise by the clamping feet of the marking roller, and the pressure of the clamping feet against the sides of the letter moves a lever to one side of a projection on the impression roller yoke, which permits the impression roller to move towards the marking roller by the action of the cam and connecting devices. It is apparent from this organization that there is no transmission of motion whatsoever, and no finger engaging the moving letter in the sense of this patent. Owing to this radical difference in the construction of the two machines, the defendant's machine does not infringe this claim of the patent. The claim cannot be held to cover every machine in which the movement of the letter in any way may be the means by which the two printing members are brought into proper position for printing. In construing this claim in another case, the Circuit Court of Appeals for the Second Circuit said:

"While it is true that by the Groth device an equivalency of result is produced, the difficulty which the complainant encounters upon the question of infringement is that the patentees describe, in the second and fourth claims, the devices in the form and peculiarities in which they are described in the specification and pictured in the drawings, and limited themselves to a barrier or finger which intercepts a moving letter in its onward path, whereby the letter, through the medium of the finger, or the finger itself, transmits motion. By reason of these limitations the Groth device escapes the charge of infringement." Groth v. International Postal Supply Company, 61 Fed. 284, 287, 288, 9 C. C. A. 507.

Respecting the second patent, No. 388,366, it is only necessary to consider claim 1, since claim 2 is simply a more limited or restricted

statement in another form of the subject-matter of claim 1. This claim reads as follows:

"(1) In a machine for stamping or marking mail matter, the combination, with the supporting-feed bed, of a stamp normally out of the path of movement of the mail matter, and a stamp tripper or releaser normally in said path."

If this claim is to be construed as covering every organization in which the marker is normally out of the path of the movement of the mail matter, and a tripping finger normally in said path, it is clearly anticipated by the earlier patent in suit, which described a stamp out of the path of the letter and an engaging finger normally in the path. In order therefore to save this claim, it is plain that it must be limited to the machine of the patent, and that the phrase "stamp tripper or releaser" must be held to refer to the tripping and releasing mechanism shown in the patent. In the first patent the "engaging finger" actuates the marker by means of an electric circuit. In this patent the tripping finger supports and releases the marker.

In defendant's machine the finger, or lever, neither supports nor directly releases the marking member or, what is the same thing, the impression member. We have previously referred to the fact that in defendant's machine, when the clamping feet of the marking roller push the letter sidewise against the pivoted lever, the other arm of the lever is out of contact with the projection on the yoke of the impression roller, and therefore, at this time, the pivoted lever supports nothing. Nor does this lever directly release the impression roller, since it merely permits it to be moved forward by the action of the cam and connecting mechanism. This comparison of the defendant's machine with the subject-matter of claim 1 fails to show any infringement of this claim. Such a comparison only affords another illustration of the substantial difference in construction and mode of operation of the two machines.

In comparing this patent with the first patent in suit, in the Groth Case, the court said:

"The distinction is that the finger is not of itself a tripper in the earlier patent, and is in the later patent a tripper which supports and releases the stamp. The earlier patent is for a stamping device in which the moving letter meets and actuates a finger in its path, which transmits motion to a tripper out of the path of the letter, so that the stamp is released. The later patent is for a stamping device in which the moving letter meets in its path, and actuates, a tripper which supports and directly releases the stamp out of the path of the letter. Reading into the two claims the requirement which is necessary to their safety, that the stamp tripper itself supports the stamp, the question is in regard to infringement." Groth v. International Postal Supply Company, 61 Fed. 284, 288, 9 C. C. A. 507.

With respect to the third patent in suit, No. 632,527, the complainant relies upon claims 1, 4, 27, and 44. It is unnecessary, however, to consider claims 27 and 44, since the important element in those claims is found in claim 4.

Claims 1 and 4 read as follows:

"(1) In a mail-marking machine, the combination of a marker having a die, a feed mechanism, and mechanism for insuring the same speed for the marker as the mail matter being marked, independently of the speed of the feed mechanism."

"(4) In a mail-marking machine for automatically marking mail matter, the combination with a feed member and a marking member having a die; of means for controlling the registration of the die upon the mail matter."

The important part of claim 1 is "mechanism for insuring the same speed for the marker as the mail matter being marked, independently of the speed of the feed mechanism."

In the machine of complainant's patents, when the power is applied, or the machine is in its normal condition, the entire marking mechanism is at rest. When, however, by means of the letter, the printing members are brought together, it is the letter which rotates the marker. It follows that the speed of the marker during the printing operation will always be the same as the speed of the moving letter, independently of the speed of the endless belt of the feed mechanism. If, for any reason, the speed of the endless belt and the letter should differ, as might be caused by the letter slipping on the belt, still the speed of the letter and the marker will always be uniform during the printing.

The defendant's machine does not infringe this claim, because, at all times, the printing roller, the impression roller, and the feed belt are positively driven at the same speed. Since in defendant's machine there is only one uniform speed, and consequently no feed mechanism with an independent speed, this claim of the patent has no application to defendant's machine.

Claim 4, as well as claims 27 and 44 of this patent, relates primarily to the feature of registration, which signifies the placing of the mark on the forward part of the envelope as it is fed through the machine. In claim 4 this element is described as "means for controlling the registration of the die upon the mail matter." This claim cannot be held to cover every means whereby the postmark is printed on the proper part of the envelope; and the question of infringement, therefore, must turn on whether the defendant's machine employs substantially the same means to effect this result.

In the patent, we start with a printing roller carrying the die, which is normally at rest. In the defendant's machine, we start with a printing roller carrying the die, which is always rotated. In the patent, broadly speaking, the problem of registration is properly to present the moving letter to a stationary die; in the defendant's machine the problem of registration is properly to present the moving letter to a constantly rotated die. Looking at the machine of the patent, it is apparent that this problem must be solved by controlling the die; and looking at the defendant's machine it is apparent that this problem must be solved by controlling the feed.

In the patent, the means for insuring the proper registration of the die are the cam, the pin, and the spring, which are connected with the marking roller. Through these means the marking roller, after each marking operation, always comes to rest in exactly the same position with respect to its die; in other words, the die is in a certain relation to the lowest point of the roller, or in the proper position for printing. When the advancing end of the letter again trips the marking roller, it is brought down in the same position upon the letter, so

that when the rotation of the marking roller is started by the letter the die prints upon the forward part of the letter. In this organization the proper registration is secured by stopping the marking roller in a certain position, and retaining it in that position for the printing operation.

In defendant's machine the means for insuring the proper registration of the die are the timing lever, which stops the advancing letter, and the clamping feet on the marking roller, which press the letter away from the timing lever and against the feed belt. These devices control the feed, and are the means employed for presenting the forward part of the letter at the proper moment to the die upon the constantly revolving marking roller. In this organization, it is by controlling the feed mechanism, or by securing the proper accuracy of the feed, that proper registration of the die upon the letter is secured.

The machine of the patents in suit and the defendant's machine differ so radically in construction and mode of operation that I fail to find infringement of any of the claims in issue. In reaching this conclusion, I have given to the patents in suit the full breadth of construction which is warranted by the position which they occupy in the art.

Upon this ground, and without entering upon the other defenses raised by the pleadings and the evidence, a decree must be entered dismissing the bill.

Bill to be dismissed, with costs.