* TREIBACHER CHEMISCHE WERKE GESELLSCHAFT MIT BE-
SCHRÄNKTER HAFTUNG v. ROESSLER & HASSLACHER
CHEMICAL CO.

(District Court, S. D. New York. February 18, 1914.)

No. 6/236.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PYROPHORIC ALLOY.
    The Welsbach patent, No. 837,017, for "a pyrophoric alloy containing cerium alloyed with iron, as and for the purposes described," describes in the specification a novel and artificial alloy possessing greater and more certain pyrophoric qualities for practical uses than any before known, the patentee being the first to disclose the fact that such quality is not inherent in pure cerium, but, as previously observed, was due to impurities therein, and the nature and percentage of the alloy in which it is the greatest, which he gives as one of cerium 70 per cent. and iron 30 per cent. The patent is a pioneer and entitled to the full benefit of the doctrine of equivalents, and, while iron is given as the preferred second metal in the alloy, others are mentioned in the specification, and the claim is not limited to such metal. *Held*, infringed by the alloy of the Huber patent, No. 967,775, which consists essentially of cerium 85 parts and magnesium 15 parts.

2. WORDS AND PHRASES—"ALLOY."
    The dictionary meaning of "alloy" is "an artificial compound of two or more metals combined while in a state of fusion."

In Equity. Suit by Treibacher Chemische Werke Gesellschaft mit Beschränkter Haftung against the Roessler & Hasslacher Chemical Company, for infringement of patent 837,017 to Welsbach, issued November 27, 1906. On final hearing. Decree for complainant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

James Hamilton, of New York City, for complainant.
Seabury C. Mastick, of New York City, for defendant.

HOUGH, District Judge.   The only claim involved is this:

"A pyrophoric alloy, containing cerium, alloyed with iron; substantially as and for the purposes described."

The "purposes described" in the specification render plain the contest before the court.

The patentee tells the world that all preceding investigators were wrong in supposing that the so-called "rare-earth" metals, when pure, possessed pyrophoric capacity; i. e., the property when abraded of giving off particles self-igniting in the air.   Admittedly these metals, and especially cerium, had long been called pyrophoric, but Welsbach deems himself the first to discover that the spark-giving quality depended upon impurities whose presence had before him been unobserved, or if noticed considered negligible.   It is not pretended that this ascertainment of a natural phenomenon constitutes patentable invention.

Since, however, the cerium ordinarily obtainable had been known to give forth sparks on abrasion, Welsbach says he sought to ascertain what kind of mixture would produce sparks in greatest abundance. Iron afforded the best results, and an alloy of cerium 70 per cent. and iron 30 per cent. the maximum pyrophoric effect.

The sparks elicited are not different from those known to have been drawn from the "rare-earth" metals, as produced before Welsbach's experiments, but the flow from his alloy is said to be so copious and certain as to furnish a "prompt and reliable" means of igniting "combustible gases mixed with air."

The patentee experimented with "certain other metals," and mentions nickel and cobalt as possible ingredients in his alloy, but iron remains the favorite.   On alleging as true the substance of the foregoing, the patentee sought and obtained the wide claim above quoted.

Defendant has imported and sold a substance manufactured by Kunheim & Co., of Berlin, said to be composed (in accordance with specification of Huber United States Patent 967,775, August 16, 1910), of magnesium 15 per cent. and cerium 85 per cent., treated with hydrogen at between 500° and 600° C., as long as any absorption of hydrogen can be detected.[1]   The magnesium-cerium compound is pyrophoric; the alleged effect of absorbing hydrogen is to increase that quality.

The defense asserts:   (1) Welsbach's invention to be void for lack of novelty; i. e., it covers only a "pre-existing inherent natural property of the alloy."   (2) Kunheim's product is not an alloy at all, and therefore not an infringement.   (3) The claim in suit is (in view of the prior art) too narrow to cover any alloy not containing substantially the preferred quantity of iron, or possibly nickel or cobalt.

First. This defense will not stand analysis.   It is true that great

[1] Defendant's product has been analyzed and results vary slightly. Silicum, aluminium, and even iron are found present, but the theoretical statement of Huber is near enough for purposes of this case.

pyrophoric activity is, and always 'must have been, an inherent natural quality in an alloy of iron and cerium. It is also true that any composition of matter has inherent natural qualities, but, before such qualities can be known and used, the matter composition must be produced. Nature does not produce the alloy of Welsbach; and, if that alloy is novel and artificial, the compound is patentable as far as novelty is concerned.

[2] Second. The dictionary meaning of alloy is "an artificial compound of two or more metals combined while in a state of fusion." The important words (for this case) are "two or more metals," and all the experts examined agree that an alloy must contain that number. .

Admittedly both magnesium and cerium are metals, and the best and sufficient evidence that defendant's product was once (at all events) an alloy is that Huber calls it one—and defendant insists that what Huber describes it sells.

But it is said that the hydrogen bath has created a cerium hydride,. which is something so different from a mere alloy of cerium and magnesium as to be a different thing; i. e., a chemical compound, of admittedly uncertain properties and formula.

On such a point as this, I am as far as possible from hazarding any opinion other than one as to the weight of evidence. I see no reason to doubt the facts testified to by Drs. Fattinger and Olsen (i. e., that they made an amalgam of the alleged infringing substance, and liberated the hydrogen), thereby demonstrating that the hydrogen was physically, not chemically, combined with the cerium and magnesium. It seems to me that what Huber called an alloy so remained, even though saturated (so to speak) with hydrogen.

[1] Third. The substantial question in this case is that of infringement, and that depends on the range of equivalents, permissible to the patentee.

The last restatement of the requirements of a "pioneer" patent in . this circuit is in Autopiano Co. v. Amphion, etc., Co., 186 Fed. at page 163, 108 C. C. A. 291.

Whether any given invention is a "wholly novel device," or one of "such novelty and importance as to mark a distinct step in the progress of the art," always and principally depends on how much men knew before they learned what the patentee taught.

Before the disclosure of Welsbach, it is I think shown that men knew nothing of the certain and reliable preparation or manufacture of a pyrophoric alloy. They thought they knew that cerium was pyrophoric, whereas they had merely observed sparks given out by an impure metal, without connecting the impurities and the sparks, as cause and effect. Before Welsbach there was and 'could be no art in pyrophoric substances, because the basis of all art, certain knowledge, was lacking. This patentee taught how certainly and knowingly to produce that which had been observed indeed, but not understood. Such invention is indeed pioneer.

The argument against the above conclusions rests upon several patents and the disclosures of numerous scientific publications. One good reference or publication is worth more than a volume of poor ones, and

I select the German patents to Escales, the article of Hillebrandt and Norton, and Moissan's article in Der Elektrische Ofen, as covering the whole defense. Escales speaks repeatedly of alloys of the rare-earth metals. No one doubts that such alloys were known before Welsbach, but his claim is for a particular alloy for a particular purpose, and Escales does not reveal any knowledge of such an alloy. Hillebrandt and Norton's thesis I regard as a good proof of the truth of Welsbach's specification statements. They evidently thought they were observing the behavior of pure cerium, and the still more interesting behavior of cerium and a little platinum; the important point is that they did not know nor ascertain the cause of what they observed. Moissan is much nearer the point in his opinion (meiner Ansicht) that it would be better to use (for fire-making apparatus) "an alloy of iron with uranium," but he never did it, and he did not tell any one just what to do.

Prophecy is often greater than invention, but it is not patentable. Believing, then, that this is a pioneer invention, can the doctrine of equivalents be invoked to read the claim in suit, on any alloy of cerium with any other metal, provided that such alloy be pyrophoric?

On this head the first inquiry is whether the patentee has tied his own hands, by limiting his claims. Groth v. International, etc., Co., 61 Fed. 284, 9 C. C. A. 507. Such is asserted to be the case here, for iron only is mentioned in the claim; but the inventor shows that the cerium is to be alloyed with iron or its equivalent (line 67), so that the final question is: What are the equivalents of iron in a pioneer patent, when the specification shows that the invention is far wider than the use of iron only?

As has been often said, where a valuable invention has been made, it is the duty of the court to uphold that which was really invented. What Welsbach invented was a metallic alloy having certain desirable qualities; he knew and said that iron was not the only (though it was the most desirable) component with cerium.

If a metal other than iron be used, does the resultant embody Welsbach's invention? This is the root query. Winans v. Denmead, 15 How. 330, 14 L. Ed. 717. The question is one of fact, not law, and the innumerable cases on equivalents are merely statements of how the minds of sundry judges have worked when sitting as jurymen.[2]

To me it is obvious that the usefulness of an alloy (i. e., a fusion of metals) was Welsbach's plainly disclosed invention; without knowledge thereof Huber would not have known that it was useful to make an alloy of magnesium and cerium; therefore he used and uses Welsbach's invention and is an infringer.[3]

The train of reasoning justifying this opinion is sufficiently stated by Colt, J., in Edison, etc., Co. v. Boston, etc., Co. (C. C.) 62 Fed. 397.

[2] In 1910 Mr. Wagner, of St. Louis, read a paper at the American Bar Association, on Mechanical Equivalents, to which Mr. Prindle, of New York, replied in 1911. Taken together, they present the personal equation sharply, and their citations cover most of the cases laid before me by counsel herein.

[3] I know complainant does not admit that defendant's infringement is exactly Huber's product, but for argument defendant's contention is taken.

In the technical history of this new art the opinions of the German and Austrian patent courts have been most valuable. I agree with the latter.

Decree for complainant, with costs.