**NIEBLO MFG. CO., Inc., v. PRESTON et al.**

District Court, D. Vermont. February 18, 1929.

No. 103.

146

Ambrose L. O'Shea, of New York City, for plaintiff.

Emery, Booth, Janney & Varney and Henry M. Weidner, all of Boston, Mass., for defendants.

THOMAS, District Judge. This suit involves the alleged infringement of Lowell patent, No. 1,493,687, for a golfing tee, granted to the plaintiff on May 13, 1924, on an application filed May 5, 1922.

The defenses are noninfringement and invalidity by reason of anticipation by, and lack of invention over, prior patents and the prior art.

The single claim of the patent in suit reads as follows: "A golfing tee, formed of a single piece of material comprising a cone-shaped shank having a pointed end so as to be readily pressed into the ground, and a disk-shaped member connected with and carried by said shank, said member being dished or concaved in its upper surface to conform to the surface of the ball and surrounded by a marginal ball-retaining and supporting rim, said shank being centrally disposed with relation to the said dished ball-supporting member."

In the specification the inventor says that this invention "has for its principal object to provide a novel and simply constructed" golfing tee, which is "formed of a single piece of material comprising a cone-shaped shank having a pointed end so as to be readily forced into the ground, and having a disk-shaped member connected with and carried by said shank, said member being dished or concaved in its upper surface to conform to the surface of the golf-ball and being surrounded by a marginal ball-retaining and supporting rim, and said shank being centrally disposed with relation to the said ball-supporting member."

It is thus apparent that the claim in suit follows the exact words of the specification as to the main object of the invention. Other objects of the invention, as appear from the specification, are to provide a neat and cheap teeing device which can be carried in the pockets of the players and which will cost so little to manufacture that the loss of such a device to the player will be practically nil, and if struck and broken by contact with the club may be readily replaced by another, or if not struck may even be left in the green and another device used upon the next tee. This device is generally made of wood, but it may be made of material which will disintegrate and act as a fertilizer if left on the green.

The patentee asserts that prior to his invention golfing tees were made either of a plurality of component parts, or, if consisting of a single element only, they were made of metal. The last-mentioned construction is objectionable because when left on the golf course it is liable to cut the feet of barefooted caddies or penetrate the rubber of

rubber-soled shoes, as well as nick and dull the blades of lawn mowers used in cutting the grass. It is further asserted that the tees used prior to the patentee's invention were either ineffective or too expensive.

Plaintiff lays great stress on the extensive sales and commercial success of its golfing tees manufactured under the patent in suit. There is no question in my mind but that at least one form of the devices manufactured and sold by the defendants, as shown by Plaintiff's Exhibit 1, is a Chinese copy of the device manufactured by the plaintiff.

Defendants contend that the golfing tees manufactured by them do not come within the terms of the claim of the patent in suit, because the plaintiff's patent must be limited to the exact construction shown in the patent drawings, not only in view of the prior art, but by reason of the self-imposed limitations put therein by the patentee during the prosecution in the Patent Office of the application which eventuated in the patent as issued.

The patented golfing tee comprises a main body member or shank which may be either cone-shaped, as shown in the drawings, or it may taper at one end so as to provide a driving point in order to readily force or press the shank into the ground. Connected with the opposite end portion of the shank is a disk-shaped portion which is dished out or concaved in its upper surface conforming to the curved surface of the golf ball and which is surrounded by a marginal rim, all for the mounting and properly placing of the golf ball upon said disk-shaped portion after the device has been pressed into the ground, as is clearly shown from an inspection of the patent drawings. This golfing tee is usually turned out of wood. If made of celluloid, rubber, or other pliable material, it may be pressed into the desired shape by means of suitable molds.

The whole controversy turns upon the interpretation or construction to be given the following phrase of the claim of the patent, to wit: "Said member (disk-shaped member) being dished or concaved in its upper surface to conform to the surface of the ball and surrounded by a marginal ball-retaining and supporting rim."

The plaintiff maintains that in the light of the specification, "conforming to the surface of the ball" means that the upper surface of the disk-shaped member conforms to the surface of the ball to the extent that may be necessary in order to permit the ball to rest in the concavity, or, to put it in another way,

the conformity need only be a general conformity, and that "surrounded by a marginal ball-retaining and supporting rim" merely refers to the periphery of the concaved surface of the head, and does not call for any substantial breadth.

On the other hand, the defendants contend that the patentee means by the words "to conform to the surface of the golf ball" that the concavity is so formed that every portion of its surface can contact with the golf ball, or a concavity having the same radius of curvature as the golf ball; and that "surrounded by a marginal ball-retaining and supporting rim" means that the disk member is surrounded by a flange or thickened portion in the nature of something more than a mere line or narrow edge on which the ball may rest.

When any doubt exists as to the meaning of a patent claim, or if it is susceptible of two interpretations, it is both right and proper that reference should be made to the drawings and specification, not for the purpose of changing or altering the claim, but to ascertain the true and proper interpretation to be given it. This is a universal rule. Its application to the case at bar, however, does not shed any light on the question presented, because the language of the specification is no clearer than the claim itself, unless it is attempted to restrict the claim to the precise construction disclosed in the drawings. Of course, a claim in a patent is a statutory requirement for the purpose of compelling a patentee to describe precisely what his invention is, and it is unjust to the public, as well as an evasion of the law, to construe a claim in a manner different from the import of its terms. When doubt arises as to the meaning of such terms, the court should place itself in the place of the patentee and the Patent Office Examiner at the time the claim was made, and should read its terms in the light of the facts and circumstances which then surrounded them. These facts may, obviously, be ascertained from the file wrapper and contents of the application for the patent. Having recourse to this, it is manifest that both the patentee and the Patent Office Examiner intended to limit the patented device to a golf tee with a concavity, every portion of the surface of which is adapted to contact with the golf ball because the file wrapper shows that as amended by the amendment filed on or about July 18, 1923, the application contained four claims which stood rejected on United States patent No. 638,920 to Grant, and British patent to Mathew, No. 14,292 of 1897, both of which

show the ball supported on a circular edge. Asking for reconsideration of this rejection, the applicant, by amendment dated July 16, 1923, argued with reference to the Grant and Mathew patents as follows:

"Referring to the patent to Grant, it will be noted that the golf tee shown therein is not provided with a dished disk-shaped member, for the proper support of the golf ball thereon. The device in practice being very small the tubular surface portion b' of the Grant patent is really too small to properly support a golf ball, and thereby renders this device impracticable.

"With reference to the device shown in the Mathew patent, the same statement is made, since in order to properly support the ball the device provided with pins A and the cup B must of necessity be made quite large."

By office letter dated February 16, 1924, the Examiner replied to the argument and repeated the rejection, whereupon by amendment dated March 7, 1924, the applicant canceled the rejected claims and substituted the single claim of the patent. At the same time the applicant amended the specification to read as follows:

"With a golfing tee of the character hereinbefore described it will be evident that every part of the supporting cup or dished ball-receiving member is in contact with the surface of the golf ball, and consequently the golfing tee is made in such a manner as to support the golf ball with a small or minimum contact with the same, and it is due to this small contact with the surface of the golf ball that there is no resistance to the flight of the ball when the same is struck with the golf club; and, furthermore, when certain kinds of strokes are made there can be no objectionable 'back-spin' of the ball.

"Furthermore, the hereinbefore described golfing tee provides a supporting medium of a very small size, thus making it impossible when using the tee, to have the face of the club come in contact with the tee after the ball surface has been struck and the ball sent upon its way."

This is the description as set forth in the specification of the patent as issued, and by it the patentee, it seems clear, limited himself to a dished or concaved supporting surface which conforms to the surface of the ball—meaning thereby a surface which contacts with the ball, not on a physical line, but through an extended area. Now, whether this self-imposed limitation by the patentee was necessary, in view of the references cited by the Patent Office, we need not here argue. At this late day it is quite immaterial, and we cannot consider that question here in our determination of the scope to be given the claim, because even if it is possible that the inventor was entitled to a broader claim than that to which he limited himself, the law presumes that he abandoned the residue to the public if he described and claimed only part of his invention. Deering v. Winona Harvester Works, 155 U. S. 286, 15 S. Ct. 118, 39 L. Ed. 153; McClain v. Ortmayer, 141 U. S. 419, 12 S. Ct. 76, 35 L. Ed. 800. The construction of patents must be in conformity with the self-imposed limitations which are contained in the claims. Groth et al. v. International Postal Supply Co. (C. C. A.) 61 F. 284. If the patentee is now of the opinion that his patent is defective and needs correction, he has recourse to the provisions of the statutes which provide for a correction of defective patents by means of reissue. But a court of equity has no power in a suit for infringement to enlarge the scope of the claim of a patent, even if by mistake it was issued in terms too narrow to cover the invention, however manifest the fact and extent of the mistake is shown to have been. United States Repair & Guaranty Co. v. Assyrian Asphalt Co. (C. C. A.) 100 F. 965.

As to the phrase, "surrounded by a marginal ball-retaining and supporting rim," it is unnecessary to refer to the file wrapper, because its meaning can be clearly ascertained from the matter set forth within the four corners of the patent in suit. There is no doubt in my mind that this term limits the claim to a concaved supporting surface on the disk-shaped member, which surface is surrounded by a rim of substantial width to aid in retaining and supporting the golf ball. If plaintiff's contention is tenable, the claim would include twice the very same element, because every concavity has a rim, and consequently it would be unnecessary to specify this rim as an element of the claim. This, and the fact that the "rim" is stated in the claim to be a ball-retaining and supporting element, clearly indicates that it does not refer merely to the upper edge of the concavity, but to a rim or flange of substantial width.

When the claim is thus construed, it must be held that the proofs do not exhibit anything sufficient to repel the ordinary presumption attending the grant of a patent. Some of the alleged anticipating patents were considered by the Patent Office, and the others are not more, but in fact less, pertinent. If the claim of the patent in suit should receive the broad construction which plaintiff

seeks to obtain, I should have no hesitation in holding it void for lack of novelty in view of the patents to Grant and Mathew, supra, and the British patent to Kirkwood, No. 253 of 1896; it being obvious that it would not amount to invention to make the composite golf tee of either Grant or Mathew of a single piece in view of the disclosure in the Kirkwood patent.

The patent in suit is in no sense a pioneer patent, but is for an improvement. There is no room for the doctrine of equivalents in such a case, but the patent is limited to the precise construction and combination shown and claimed in his patent. He is limited in this instance to a disk-shaped member, dished or concaved in its upper surface to conform to the surface of the ball and surrounded by a marginal ball-retaining and supporting rim as construed herein to avoid anticipation. The evidence adduced clearly proves that the concavities in the two forms of defendant's device do not conform to the surface of the ball, nor are they surrounded by a ball-retaining and supporting rim. Consequently the defendant's golf tees do not infringe the claim of the patent in suit.

For these reasons the bill is dismissed, with costs to abide the event.

Decree accordingly.