**HERSHEL CALIFORNIA FRUIT PROD-
UCTS CO., Inc. et al. v. HUNT
FOODS, Inc.**

No. 31833.

United States District Court
N. D. California, S. D.

April 17, 1953.

Philip S. Ehrlich, R. J. Hecht, Albert A. Axelrod, Philip S. Ehrlich, Jr., and Julien R. Bauer, San Francisco, Cal., for plaintiffs.

Cushing, Cullinan, Duniway & Gorrill, San Francisco, Cal., for defendant.

HARRIS, District Judge.

Plaintiffs, engaged in the business of canning and selling tomato products, seek a preliminary injunction against defendant corporation in accordance with the provisions of Section 16 of the Clayton Act, 15 U.S.C.A. § 26. The primary relief which plaintiffs ask is that defendant be restrained from selling its tomato paste product at unreasonably low prices for the

purpose of destroying competition or eliminating a competitor in the manufacture, sale and distribution of tomato paste, or for the purpose of monopolizing or attempting to monopolize interstate commerce in tomato paste.

Plaintiffs charge defendant with violation of (a) Section 2 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 2, by reason of its monopolizing or. attempting to monopolize interstate trade or commerce in tomato paste;

(b) Section 3 of the Robinson-Patman Act, 15 U.S.C.A. § 13a, ·by reason of its selling tomato paste at unreasonably low prices with intent to destroy competition or injure competitors.

Defendant points out that plaintiffs have the burden of establishing violations of the anti-trust laws and that they must make out more than a *prima facie* case in.order to obtain a preliminary injunction. Defendant contends that there has been failure on plaintiffs' part to make such a showing.[1]

Conceding that it has cut prices, defendant argues that such cuts are not in themselves illegal. Rather, it is asserted, reduction in the price of a commodity is consistent with the legal conduct of a competitive business.[2]

With respect to monopolization or attempted monopolization under Section 2 of the Sherman Act, defendant refers to the record which establishes that its share of the tomato paste market is approximately 8% of the total pack for the years in question. This figure, it is claimed, shows that defendant clearly is not a monopoly, nor in a dominant position, and further indicates that it lacks the power to monopolize the tomato paste industry. Its effort to build up its business in six ounce containers does not in itself constitute a violation of the Sherman Act.[3]

Defendant asserts that it has not charged unreasonably low prices with intent to destroy competition or eliminate a competitor, contrary to the provisions of Section 3 of the Robinson-Patman· Act. The record, it is claimed, shows that defendant was motivated by such factors as seasonal conditions, size of pack, the general market and that defendant reduced its prices when it appeared to be necessary to do so in order to move the particular product.[4]

Defendant also challenges the constitutionality of Section 3 of the Robinson-Patman Act, asserting that it is so vague as to violate the Fifth and Sixth Amendments to the Constitution. It is unnecessary to pass upon this contention, as the decision may be otherwise grounded.[5]

Defendant points out there is no showing that its current tomato paste price is unreasonably low, regardless of what its past price may have been. Hence, it is not within the province of a court of equity to grant a preliminary injunction since there is nothing in defendant's present or future conduct which would warrant the issuance of such injunction, in the preservation of any claimed status quo.

The cause proceeded to hearing before this court on the motion for preliminary injunction based upon conflicting affidavits on file and some oral testimony. The court indicated after several days' hearing that the motion for preliminary injunction was not justified.[6] At this juncture, counsel

1. Warner Bros. Pictures v. Gittone, 3 Cir., 110 F.2d 292; Champlin Refining Co. v. Corporation Commission of the State of Oklahoma, 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062.

2. Schine Chain Theatres, Inc. v. United States, 334 U.S. 110, 68 S.Ct. 947, 92 L.Ed. 1245; see also, Food & Grocery Bureau of Southern California v. United States, 9 Cir., 139 F.2d 973.

3. United States v. Griffith, 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236; United States v. U. S. Steel Corp., 251 U.S. 417, 40 S.Ct. 293, 64 L.Ed. 343; Infra: See also: Package Closure Corp. v. Sealright Co., 2 Cir., 141 F.2d 972.

4. Cf. F. & A. Ice Cream Co. v. Arden Farms Co., D.C., 98 F.Supp. 180, 189.

5. Cf. People v. Building Maintenance Contractors Ass'n, Cal.App., 253 P.2d 983 et seq.; F. & A. Ice Cream Co. v. Arden Farms Co., D.C., 98 F.Supp. 180, at page 189.

6. Tr. pp. 213 et seq.

representing the plaintiffs requested the opportunity to present additional oral testimony supplemental to the affidavits.

This privilege was accorded and thereafter approximately 31 days were consumed in the hearing of witnesses on the motion as well as depositions, and the presentation of documentary proof, elaborate accounting data and graphical representations.

At the close of plaintiffs' evidence the defendant moved for a dismissal of the motion and denial thereof under Sec. 41(b), Fed.Rules Civ.Proc., 28 U.S.C.A., upon the ground that upon the facts and the law plaintiffs had not shown a right to relief.

■ The burden cast on plaintiffs on a motion for preliminary injunction in a case of this character is a heavy one and the injunction should not be granted or indulged in except in a case clearly demanding it.

■ The injunction was and is necessary to preserve the status quo, so it is claimed by the plaintiffs. What status quo? If reasonableness of price is the test, the factors which bear upon it would appear to be numerous.[7] The term "status quo" ordinarily refers to the last actual peaceable, noncontested status of the parties to the controversy which preceded the pending suit and which should be preserved until a final decree can be entered.

The preservation of status quo should not be confused with the economic stabilization of a whole industry, as compared with the restoration or attempted restoration of competition within such industry.

I do not apprehend that it is the duty of a court on a motion of this character to enter into the business of regulating and adjusting the whole tomato paste industry in California, which would be the inevitable result if the decree prayed for herein should be granted.

■ In general, plaintiffs and defendant are free to set their prices according to their best judgment under the conditions of the market as it was perceived at the time. For this court to superimpose its judgment on past events operating in 1951–1952 with all of the attendant circumstances and vicissitudes relating to the tomato pack, and to translate the same as operative *in futuro* would make for a preliminary decree which would do violence not only to common sense, but equally to well-established principles which are applicable on motions of this character.[8]

■ Cutting prices is not *per se* unlawful[9] and will not supply the *intent* which this court must find in order to justify the granting of the stringent decree requested herein. Plaintiffs' major complaint concerning price cutting centers around the period of May and June, 1952, and prior thereto, culminating in defendant's drop. in price of approximately $1 per case.[10]

■ Concerning those events, the record thus far is equally consistent with good faith[11] as compared with any alleged malevolent motive or intention on the part of the defendant to break or drive competition from the market. There is credible evidence that the market was over supplied with tomato paste, that defendant, a newcomer in the field of packing tomato paste, did not have the same customer acceptance as did some of the other and more estab-

7. United States v. Trenton Potteries, 273 U.S. 392, at page 397, 46 S.Ct. 377, 71 L. Ed. 700.

8. United States v. Oregon State Medical Soc., 343 U.S. 326, at page 333, 72 S.Ct. 690, at page 695, 96 L.Ed. 978:
   "The sole function of an action for injunction is to forestall future violations. It is so unrelated to punishment or reparations for those past that its pendency or decision does not prevent concurrent or later remedy for past violations by indictment or action for damages by those injured. All it takes to make the cause of action for relief by injunction is a real

threat of future violation or a contemporary violation of a nature likely to continue or recur. * * * Even where relief is mandatory in form, it is to undo existing conditions, because otherwise they are likely to continue."

9. Schine Chain Theatres, Inc. v. United States, 334 U.S. 110, at page 120, 68 S. Ct. 947, 92 L.Ed. 1245.

10. Plaintiffs' complaint p. 30, subd. (c), (d) and (e); Testimony of Louis Capone, Tr. p. 76 et seq.

11. Package Closure Corp. v. Sealright Co., 2 Cir., 141 F. 972, 977.

lished brands; that shortly prior to the decline in Hunt's price schedule a legitimate market test was conducted by a recognized, established and reputable broker. [12] This test apparently indicated to the defendant's management that the prices should be lowered in order to move the product. This discretion was exercised in the light of all the factors then envisaged.

Plaintiffs contend that the market test engaged in by the defendant was sham and a subterfuge and merely a device to effectuate the alleged unlawful purposes on the part of the defendant.[13] The broker who engaged in testing the market as to price stability, on behalf of the defendant, was offered as a witness and subjected to lengthy examination. There was nothing in his testimony that would indicate that he was a part of any alleged plan looking toward a disruption of the market, or that his findings were not based on actual conditions.

Plaintiffs contend, and offered testimony to the effect that, the tomato product could have been sold at a price of $7.50 per case.[14] Such opinion evidence and market prognostication were based on the speculation that the market would be sustained. This is conjecture which is without regard for the matters of internal policy and management confronting the defendant company and its officers.[15]

■ With respect to the question of alleged irreparable injury: The complaint demonstrates that the damages, if any, suffered by the plaintiffs are measurable and ascertainable in terms of money value. In fact, a schedule of such claimed damages is set forth in the pleadings.[16]

Under such circumstances the claim that the alleged injuries are irreparable, thus requiring the intervention of equity and the issuance of a preliminary injunction is without merit.

It is ordered that the motion of plaintiffs for preliminary injunction be, and the same is in all respects, denied.

This memorandum decision may be regarded as embodying the Court's findings of fact and conclusions of law in accordance with Rule 52(a) Rules of Civil Procedure.

12. Tr. p. 1002.

13. Tr. pp. 2674, 2682.

14. Tr. p. 555; see also Affidavit of Samuel L. Rosenthal.

15. Tr. pp. 2088, 2247; see also Deposition of Frederick R. Weisman, President of Defendant Corporation.

16. Complaint p. 32.