Harry V. VANCE, Trustee in Bankruptcy for Frank Melvin Thompson, Bankrupt, Plaintiff,

v.

SAFEWAY STORES, Incorporated, a corporation, Defendant.

No. 2930.

United States District Court
D. New Mexico.

Jan. 19, 1956.

**842**

Nordhaus & Moses, Robert J. Nordhaus, Albuquerque, N. M., for plaintiff.

Keleher & McLeod, John B. Tittmann, Albuquerque, N. M., Douglas Stripp, Kansas City, Mo., for defendant.

ROGERS, District Judge.

This cause comes before the Court upon the first amended complaint filed by Harry V. Vance, trustee in bankruptcy for Frank Melvin Thompson, a bankrupt, against Safeway Stores, Incorporated, a corporation, and a motion to dismiss said first amended complaint, a motion of the defendant for a more definite statement of plaintiff's first amended complaint, and a motion to strike from said first amended complaint certain allegations contained in the last-mentioned pleading. Plaintiff seeks judgment against the defendant in the sum of $45,000 and that the judgment so recovered be trebled, for reasonable attorneys fees, costs of suit, and for other equitable relief under an alleged violation of Section 3 of the Act of Congress of June 19, 1936, commonly known as the Robinson-Patman Act, 49 Stat. 1528, 15 U.S.C.A. § 13a; and Section 4 of the Clayton Act, as amended, 38 Stat. 731, 15 U.S.C.A. § 15.

A short summary of the allegations contained in the amended complaint, are deemed necessary for a proper presentation of the questions of law arising by the attack levied against the amended complaint by the above-mentioned motions.

· The complaint alleges that Vance is the trustee in bankruptcy of Thompson, who was adjudicated a bankrupt May 28, 1955, Thompson being a citizen of New Mexico; that the defendant is a Maryland corporation, qualified as a foreign corporation in New Mexico; that from 1948 until May, 1955, Thompson operated a retail grocery store in Albuquerque, New Mexico. There then followed a statement descriptive, according to the plaintiff, of the defendant corporation. In effect, it alleges that the defendant is the second largest food chain in the United States, operating more than two thousand supermarkets in twenty-four states, having a very large sales in the United States, employing over forty-nine thousand persons, and owning and operating various warehouses, bakeries, candy plants, milk plants and similar food processing establishments. It is thereafter alleged that defendant's operations in the United States are divided into fifteen distribution divisions, one of which is the El Paso Division serving West Texas and New Mexico, including Albuquerque. Defendant is alleged to be the dominant distributor and retailer of food products in West Texas and New Mexico, and that it supplies its retail stores in New Mexico from warehouse facilities operated in El Paso, Texas, transporting the greater portion of the food products sold in its stores in its own trucks from outside New Mexico, directly to its stores in Albuquerque, and elsewhere in New Mexico. An allegation appears that defendant's sales in its stores in Albuquerque are both at retail and wholesale. There then appears an omnibus allegation that by reason of defendant's unlimited financial resources, and its processing and storage facilities, its centralized management and its dominant position as a food distributor in this region, defendant was and is able to destroy competition in the City of Albuquerque, at the will of its management. It is then alleged that between September 1, 1954, to the date of the filing of the complaint, defendant, at the direction of its management located in El Paso, Texas, and Oakland, California, sold goods in the course of interstate

commerce in its Albuquerque stores, at prices substantially lower than prices exacted by defendant for the same goods in other cities and towns in New Mexico, and elsewhere in the United States, for the purpose of destroying competition in the grocery business in the City of Albuquerque, in violation of those sections of the Federal Statutes first above cited. It is specifically alleged that substantially all the prices were established by defendant's management located outside of New Mexico. Certain goods are attempted to be specified as having been sold in violation of the Robinson-Patman Act. These include soft drinks, coffee, flour, butter and other household staples. It is then alleged that when these items are advertised at unreasonably low prices, to attract large numbers of customers, this has a tendency to destroy competition, and it is alleged that defendant's competitors could not afford to sell such items at unreasonably low prices over a period of time, and remain in business. It is stated that said unreasonably low prices extended over a period of more than six months, with the knowledge and intent on the part of the defendant that such action would destroy a number of its smaller competitors in Albuquerque, and that as a proximate result of the alleged illegal action of the defendant, a number of defendant's competitors, including the plaintiff, were destroyed. They specifically allege that the bankrupt Thompson suffered a loss of business and profits in the years 1954 and 1955 to his damage in the sum of $20,000, and further, as a proximate result of defendant's alleged illegal actions, Thompson became insolvent, became bankrupt, and lost his grocery business to his damage in the amount of $25,000.

The defendant's motion to dismiss plaintiff's first amended complaint is based on the following grounds, first, that the first amended complaint fails to state a claim upon which relief can be granted, in that it does not contain a short and plain statement of the claimants, showing plaintiff entitled to relief as required by Rule 8(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.; second, that the amended complaint fails to state a claim on which relief can be granted, in that it did not allege sufficient facts with particularity to state a violation of Section 3 of the Robinson-Patman Act, 15 U.S.C.A. § 13a; third, that the amended complaint fails to state a claim upon which relief can be granted, and fails to establish the jurisdiction of this Court over the subject matter of this action, for the reason that the complaint does not concern transactions, occurrences or activities taking place in the course of interstate commerce and within the scope of Section 3 of the Robinson-Patman Act, supra; fourth, the amended complaint fails to state a claim on which relief can be granted under Section 3 of the Robinson-Patman Act, supra, for the reason that Title 15 U.S.C.A. § 13a, is unconstitutional, being so vague and indefinite, that it violates the Fifth and Sixth Amendments to the Constitution of the United States, having no reasonable relation to the anticipated evil, and constituting an unreasonable interference with freedom of contract, as guaranteed by the Fifth Amendment to the Constitution of the United States; fifth, that the amended complaint fails to state a claim upon which relief can be granted under Section 3 of the Robinson-Patman Act, for the reason that said section is not one of the "Anti-Trust Laws", within the purview of Section 4 of the Clayton Act, 15 U.S.C.A. § 15, and no private right of action for violation of said section exists under any laws of the United States; sixth, the amended complaint fails to state a claim upon which relief can be granted, under Section 3 of the Robinson-Patman Act, Title 15 U.S.C.A. § 13a, for the reason that said complaint fails to allege facts establishing a violation of Section 3 of the Robinson-Patman Act, or facts demonstrating injury to plaintiff's business or property on account of an alleged violation of said section.

The grounds dispositive of this cause of action in its present status, will be

taken up in the order of their importance.

It has been deemed best to formulate appendices to this opinion, wherein can be contained the various statutes in dispute, together with pertinent references to actions taken on Congressional bills by the Senate, the House of Representatives and committees thereof. By so doing, needless excerpts from the Statutes and from Congressional proceedings can thus be avoided.

Little need be said, relative to the motions to strike and make definite and certain, in view of the disposition hereinafter made of the cause on the motion to dismiss. Suffice it to say, if this cause be eventually tried upon its merits, the issues to be submitted to a jury, which has already been demanded herein, can be delineated with precision at a pretrial conference, and thereby improper allegations can be deleted from any submission of the cause to a jury. Likewise, by means of pre-trial conferences, by discovery, Rules 26 through 37, 28 U.S.C.A., and by adherence to the suggestions contained in "Short Cuts in Long Cases", 13 F.R.D. page 42 et seq., pertinent information should be acquired by all of the parties hereto, so that a full presentation of all the ramifications of this cause can be had.

Passing, now, to the motion to dismiss, the Court passed upon the three grounds therein, which were strenuously argued, orally, before the Court, namely, that the Court lacks jurisdiction of the subject matter of this action; that section 3 of the Robinson-Patman Act is unconstitutional, and lastly, that a private litigant has no right to maintain a treble damage action for violation of Section 3 of the Robinson-Patman Act. Defendant contends that Section 3 of the Robinson-Patman Act specifically requires that the action constituting violations thereof, must occur "in the course of commerce", and that the Act is specifically limited to things done in the course of commerce, and has no application to purely intra-state transactions, citing Myers v. Shell Oil Co., D.C., 96 F.

Supp. 670, and Standard Oil Co. v. Federal Trade Commission, 340 U.S. 231, 71 S.Ct. 240, 95 L.Ed. 239. Defendant emphasizes in this regard that all of the sales involved in this case were at retail from the Safeway markets to the home consumer.

It is true that under the doctrine of Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, Atlantic Co. v. Citizens Ice & Cold Storage Co., 5 Cir., 178 F.2d 453, and Ewing-von Allmen Dairy Co. v. C. & C. Ice Cream Co., 6 Cir., 109 F.2d 898, and Federal Trade Commission v. Bunte Bros., Inc., 312 U.S. 349, 61 S.Ct. 580, 85 L.Ed. 881, together with many other cases of similar tenor, retail sales are considered solely as intra-state transactions. We are nevertheless confronted with the holding and the language in Moore v. Meads Fine Bread Co., 348 U.S. 115, 75 S.Ct. 148, 99 L.Ed. 145, decided by the Supreme Court of the United States in December, 1954.

The plaintiff strongly urges that the merchandising policies, from those of broad national concept down to the specific pricing of individual items of food are conceived and executed at defendant's division headquarters in El Paso, Texas, and at its Oakland, California, offices, and that the local operator of the defendant's public markets merely follows to the last detail, the comprehensive plans made beyond the boundaries of this district. This contention of the plaintiff must be regarded as true, for the purposes of the instant motion, and in view of this strenuous contention, and the language in the Mead Bread case, supra, this Court is loathe to rule upon this ground at this stage of the proceedings, and hence will reserve ruling thereon, until some future proceeding in this cause. The Court does not wish to have this ruling be regarded as a direct overruling of this ground, lest it be regarded as "the law of the case".

We pass, now, to the second ground, that Section 3 of the Robinson-Patman Act is unconstitutional. The challenged statute appears as Section 3

of the Robinson-Patman Act first set forth in the appendix hereto. Defendant contends that this section is so vague, indefinite and uncertain that an accused cannot determine in advance, with reasonable certainty, what conduct on its part might be claimed to violate that section's provisions. In support of its motion, defendant has cited and argued the cases of Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322, United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516, Musser v. State of Utah, 333 U.S. 95, 68 S.Ct. 397, 92 L.Ed. 562, and Cline v. Frink Dairy Co., 274 U. S. 445, 47 S.Ct. 681, 71 L.Ed. 1146. A thorough study of the statute in question, and the authorities pertinent thereto, have implanted in the Court's mind grave doubts as to the constitutionality of Section 3 of the Robinson-Patman Act, Title 15 U.S.C., Section 13a. A sound application of the canons of constitutional law, however, makes it improvident for this Court to rule upon this issue at this stage of the proceedings. It is a general principle of constitutional law, that Courts will not pass on the constitutionality of an Act of the Legislature, if the merits of the case may fairly be determined otherwise, without so doing. See Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389; Wright v. Vinton Branch of Mountain Trust Bank, 300 U.S. 440, 57 S.Ct. 556, 81 L. Ed. 736, and Crowell v. Benson, 285 U. S. 22, 52 S.Ct. 285, 76 L.Ed. 598. Stated differently, it may be said that a court will pass upon the constitutionality of law only when necessary to the determination upon the merits of the case under consideration. See Ohio River & Western R. Co. v. Dittey, 232 U.S. 576, 34 S.Ct. 372, 58 L.Ed. 737; Southwestern Oil Co. v. State of Texas, 217 U.S. 114, 30 S.Ct. 496, 54 L.Ed. 688, and Marvin v. Trout, 199 U.S. 212, 26 S.Ct. 31, 50 L.Ed. 157.

Inasmuch as the Court's ruling as hereinafter discussed is to the effect that Title 15 U.S.C.A. § 13a is a criminal statute, only, and does not afford a private litigant an action for treble damages for violation thereof, no necessity appears for a direct holding as to the constitutionality of such statute. For this reason, the Court will resist the allure of proceeding further under this phase of the case, will reserve ruling on that point, and will now proceed to the ground which the Court holds disposes of the matter presented to the Court.

■ In holding as it does, that a private litigant has no right to maintain a treble damage action for violation of Section 3 of the Robinson-Patman Act, 15 U.S.C. § 13a, the Court does so after recourse to Vols. 79 and 80 of the Congressional Record, the Committee Reports pertaining to the Robinson-Patman Act, and the Borah-Van Nuys bill and a reference to Vol. 38, U. S. Statutes at Large, 730 et seq., and 49 U. S. Statutes at Large, page 1526 et seq.

A summary of the legislative history of the statutes under consideration in this case is set forth in the third part of the appendix to this opinion, and reference may be had thereto for the factual background upon which the Court's decision is, to some extent, predicated. It should be pointed out that unnecessary confusion is presented to any person checking the United States Code or U. S.Code Annotated, by reason of the method adopted by the codifiers in labeling the Acts in question. Sections 1 and 2 of the Robinson-Patman Act are set forth respectively in Title 15 U.S.C. as Sections 13 and 21a, while Section 3 thereof is labeled "13a". This confusing numbering of the Statutes accounts, in the Court's opinion, for much of the confusion appearing in previous decisions seeking to construe these important Acts of Congress. I feel that the Bench and the Bar have, in times past, been led into error by reason of this method of codification, and may account for some of the opinions now existing in our law reports.

■ As a starting premise, we may assume that private litigants have no right of action under the anti-trust laws,

unless the right is specifically created and granted by Congress. 15 U.S.C. § 15 provides, in effect, that any person injured in business by reason of anything forbidden in the anti-trust laws, may sue therefor in any District Court of the United States, and shall recover triple damages, costs of suit and a reasonable attorney's fee. In order to determine the meaning of the words "Anti-trust laws", one must look at that section of Title 15, U.S.Code, defining the words used therein. Referring, first, to Section 12 of Title 15, U.S.Code, we find that "Anti-trust laws", as used in Section 15 of said Title, include sections 1 to 27 of Title 15. Were one to stop at this stage of legal research, the immediate result would be that one would be convinced that Title 15 U.S.C. § 13a, being included between Sections 1 and 27 of Title 15, is an Anti-trust law, the violation of which would give rise to a triple damage action on the part of an injured competitor. The codifiers state as the source of Section 12, Title 15 U.S.C.A., Chapter 323, § 1, 38 Stat. 730, approved October 15, 1914. A portion of Section 1 of Chapter 323 of the Statutes at Large last above cited, is set forth in the appendix. It will be noted that the Anti-trust laws therein defined, relate by title and date, to the Sherman Act, the Clayton Act, amendments to each of the said Acts, and to a certain taxation act, all enacted prior to October 15, 1914. This section has never been amended by Congress, and hence, we must construe and limit the definition of "Anti-trust laws", to those laws specifically enumerated in the 1914 Statutes and such subsequent Acts of Congress as amend any of the Acts specifically therein enumerated. To do otherwise would constitute Judicial legislation, and would be an affront to one of the three coordinating and separate branches of our National Government.

A close examination of the Robinson-Patman Act, as it appears in 49 Stat., pages 1526 to 1528, conclusively shows the Clayton Act was amended, and only amended by Section 1 of the Robinson-Patman Act. The enacting clause of Chapter 592 of the 74th Congress provides that Section 2 of the Act entitled "An Act To supplement existing laws against unlawful restraints and monopolies, and for other purposes", approved October 15, 1914, as amended (U.S.C. Title 15, Section 13), is amended to read as provided in Section 1 of the Robinson-Patman Act. Said Section 2 is preceded by quotation marks, which continue until the end of Section 1 of the Robinson-Patman Act. Section 2, regarding pending litigation, Section 3 being the Act upon which plaintiff Vance seeks damages herein, and Section 4 being an exclusion of cooperative associations, do not purport to be amendatory of any then existing Anti-trust Act. Congress does not appear to even have attempted to so amend existing Anti-trust Acts, and such an intent should not be implied by those of us whose duty it is to construe Congressional Statutes.

I take it that no authority need be cited as to our right to go behind the codifications of our Federal laws. 1 U.S.C.A. page 4, states, in effect, that the matters set forth in the Code shall establish prima facie, the laws of the United States which are general and permanent in nature, but nothing in the Act authorizing the codification shall be construed as repealing or amending any such law, or as enacting as new law, any matter contained in the Code. It is then provided that in case of any inconsistencies arising through omission or otherwise, between the provisions of any of the sections of the Code, and the corresponding portions of the legislation theretofore enacted, effect shall be given for all purposes whatsoever, to such enactments.

When Congress creates a new offense and sets forth the penalty which the Court concludes Congress did, as to Title 15 U.S.C. § 13a, the penalty so provided, in this case a criminal penalty, is exclusive. See Wilder Mfg. Co. v. Corn Products Refinery Co., 236 U.S. 165, 35 S.Ct. 398, 59 L.Ed. 520; State of Minnesota v. Northern Securities Co., 194 U.S. 48, 24 S.Ct. 598, 48 L.Ed. 870; United

States v. Cooper Corp., 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071, and Paine Lumber Co. v. Neal, 244 U.S. 459, 37 S.Ct. 718, 61 L.Ed. 1256.

This point of law has never received the specific attention of the Supreme Court of the United States. It was urged by the plaintiff that the decision of that tribunal in the Mead Bread case, supra, is authority for the proposition that a private litigant has a right for damages in a civil action. A study of the court file in this district, where that cause arose, a study of the transcript on appeal, and many readings of Mr. Justice Douglas' opinion all point to the conclusion that never once, by direction or indirection, was this issue brought to the attention of the trial court, the U. S. Court of Appeals, nor of the Supreme Court of the United States. This issue has received the attention of several U. S. District Courts, and at least one U. S. Court of Appeals. In the case of National Used Car Market Report, Inc., v. National Auto Dealers Association, D.C. D.C.1951, 108 F.Supp. 692, 694, in dismissing a complaint under Section 3 of the Robinson-Patman Act, the court stated "The Court is inclined to the view that no action for damages or for injunction is maintainable under the Section in question." The Court of Appeals of the District of Columbia, in affirming that decision in the case of National Used Car Market Report v. National Auto Dealers Association, 91 U.S.App.D.C. 313, 200 F.2d 359, apparently approved of the lower court's ruling that no civil action is available to a private litigant. To be sure, the matter was not extensively presented in the opinions of either court, but this Court is convinced that the rule of the Court of Appeals for the District of Columbia is that no action for damages exists in a private individual, and that that court is in harmony with the instant decision.

In the case of Hershel Calif. Fruit Products Co. v. Hunt Foods, D.C., 119 F.Supp. 603, the court expressed grave doubts as to whether Section 3 of the Robinson-Patman Act is one of the Anti-trust laws, so as to provide a private right of action for its violation. This opinion is apparently shared by contributors to Law Review articles. See 50 Harvard Law Review, pages 106, 121 and 122. Werne "Business and the Robinson-Patman Law." See, also, 85 Univ. of Pa. Law Review, 306; 22 Wash. Univ. Law Quarterly 153, and 22 Amer. Bar Association Journal 539, at page 649, Note 14. Another non-judicial opinion, which harmonizes with this decision, is that of the Attorney General's National Committee to Study the Anti-trust Laws; in its report dated March 31, 1955 at page 200, it is stated:

> "We believe that acceptance of Section 3 as a basis for private treble damage litigation involves highly dubious statutory construction and, more important, finds support neither in the legislative intent nor overall antitrust policy. Hence, at the least, any authority to enforce Section 3 should be restricted to responsible officials of the United States. Such drastic legislation threatening common and competitive pricing practices with the risk of criminality, if tolerated at all, should be accessible only to the Government which has already sought to limit its application."

The decisions reaching an opposite conclusion have been collected and set forth by U. S. District Judge Yankwich in the case of Balian Ice Cream Co. v. Arden Farms Co., D.C.1950, 94 F.Supp. 796. I realize that Judge Yankwich is an able jurist with considerable experience in Anti-trust law, both prior to his ascendency to the Federal Bench, and during his tenure thereof. In spite of this, I disagree with him, and herein hold directly contra to that jurist. An analysis of the authorities upon which he apparently relied, and which he sets forth in the Balian Ice Cream Co. case, demonstrates that they either do not involve Section 3 of the Robinson-Patman Act at all, or involve said Statute, together with various sub-sections of Title 15 U.S.C. § 13(a). As I remember it, some

eight cases are cited in the Balian case, but if said number were quadrupled, those cases would not change my deep-set conviction, which is my ruling herein, that Title 15 U.S.C. § 13a, is a criminal statute, only, and that a private litigant has no right of action for damages for an alleged violation thereof.

The defendant will submit an order in conformity with this opinion by January 31, 1956.

### Appendix "A"

### The Robinson-Patman Act
[Public—No. 692—74th Congress]
[H.R. 8442]

### An Act

To amend section 2 of the Act entitled "An Act To supplement existing laws against unlawful restraints and monopolies, and for other purposes", approved October 15, 1914, as amended (U.S.C., Title 15, sec. 13), and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That section 2 of the Act entitled "An Act To supplement existing laws against unlawful restraints and monopolies, and for other purposes", approved October 15, 1914, as amended (U.S.C., Title 15, sec. 13), is amended to read as follows:

" 'Sec. 2. (a) That it shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: *Provided,* That nothing herein contained shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered: *Provided, however,* That the Federal Trade Commission may, after due investigation and hearing to all interested parties, fix and establish quantity limits, and revise the same as it finds necessary, as to particular commodities or classes of commodities, where it finds that available purchasers in greater quantities are so few as to render differentials on account thereof unjustly discriminatory or promotive of monopoly in any line of commerce; and the foregoing shall then not be construed to permit differentials based on differences in quantities greater than those so fixed and established: *And provided further,* That nothing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade: *And provided further,* That nothing herein contained shall prevent price changes from time to time where in response to changing conditions affecting the market for or the marketability of the goods concerned, such as but not limited to actual or imminent deterioration of perishable goods, obsolescence of seasonal goods, distress sales under court process, or sales in good faith in discontinuance of business in the goods concerned.

" '(b) Upon proof being made, at any hearing on a complaint under this section, that there has been dis-

crimination in price or services or facilities furnished, the burden of rebutting the prima-facie case thus made by showing justification shall be upon the person charged with a violation of this section, and unless justification shall be affirmatively shown, the Commission is authorized to issue an order terminating the discrimination: *Provided, however,* That nothing herein contained shall prevent a seller rebutting the prima facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor.

" '(c) That it shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid.

" '(d) That it shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities.

" '(e) That it shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms.

" '(f) That it shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section.'

"Sec. 2. That nothing herein contained shall affect rights of action arising, or litigation pending, or orders of the Federal Trade Commission issued and in effect or pending on review, based on section 2 of said Act of October 15, 1914, prior to the effective date of this amendatory Act: *Provided,* That where, prior to the effective date of this amendatory Act, the Federal Trade Commission has issued an order requiring any person to cease and desist from a violation of section 2 of said Act of October 15, 1914, and such order is pending on review or is in effect, either as issued or as affirmed or modified by a court of competent jurisdiction, and the Commission shall have reason to believe that such person has committed, used or carried on, since the effective date of this amendatory Act, or is committing, using or carrying on, any act, practice or method in violation of any of the provisions of said section 2 as amended by this Act, it may reopen such original proceed-

ing and may issue and serve upon such person its complaint, supplementary to the original complaint, stating its charges in that respect. Thereupon the same proceedings shall be had upon such supplementary complaint as provided in section 11 of said Act of October 15, 1914. If upon such hearing the Commission shall be of the opinion that any act, practice, or method charged in said supplementary complaint has been committed, used, or carried on since the effective date of this amendatory Act, or is being committed, used or carried on, in violation of said section 2 as amended by this Act, it shall make a report in writing in which it shall state its findings as to the facts and shall issue and serve upon such person its order modifying or amending its original order to include any additional violations of law so found. Thereafter the provisions of section 11 of said Act of October 15, 1914, as to review and enforcement of orders of the Commission shall in all things apply to such modified or amended order. If upon review as provided in said section 11 the court shall set aside such modified or amended order, the original order shall not be affected thereby, but it shall be and remain in force and effect as fully and to the same extent as if such supplementary proceedings had not been taken.

"Sec. 3. It shall be unlawful for any person engaged in commerce, in the course of such commerce, to be a party to, or assist in, any transaction of sale, or contract to sell, which discriminates to his knowledge against competitors of the purchaser, in that, any discount, rebate, allowance, or advertising service charge is granted to the purchaser over and above any discount, rebate, allowance, or advertising service charge available at the time of such transaction to said competitors in respect of a sale of goods of like grade, quality, and quantity; to sell, or contract to sell, goods in any part of the United States at prices lower than those exacted by said person elsewhere in the United States for the purpose of destroying competition, or eliminating a competitor in such part of the United States; or, to sell, or contract to sell, goods at unreasonably low prices for the purpose of destroying competition or eliminating a competitor.

"Any person violating any of the provisions of this section shall, upon conviction thereof, be fined not more than $5,000 or imprisoned not more than one year, or both.

"Sec. 4. Nothing in this Act shall prevent a cooperative association from returning to its members, producers, or consumers the whole, or any part of, the net earnings or surplus resulting from its trading operations, in proportion to their purchases or sales from, to, or through the association.

"Approved, June 19, 1936."

Appendix "B"

Section 1 of the Clayton Act, Chapter 323, § 1, 38 Stat. 730, reads as follows:

"That 'antitrust laws,' as used herein, includes the Act entitled 'An Act to protect trade and commerce against unlawful restraints and monopolies,' approved July second, eighteen hundred and ninety; sections seventy-three to seventy-seven, inclusive, of an Act entitled 'An Act to reduce taxation, to provide revenue for the Government, and for other purposes,' of August twenty-seventh, eighteen hundred and ninety-four; an Act entitled 'An Act to amend sections seventy-three and seventy-six of the Act of August twenty-seventh, eighteen hundred and ninety-four, entitled "An Act to reduce taxation, to provide revenue for the Government, and for other

purposes,"' approved February twelfth, nineteen hundred and thirteen; and also this Act."

Chap. 323, § 1, 38 Stat. 730.

## Appendix "C"

### Legislative History of Section 3, Robinson-Patman Act

An analysis of the legislative history of Section 3 of the Robinson-Patman Act shows that it was a separate criminal statute known as the Borah-Van Nuys Bills, which was introduced in the Senate on May 4, 1936, some eight months after the Robinson and Patman Bills were presented to the House and Senate.

The Borah-Van Nuys measure was attached to the Robinson Bill (No. 4171), in the Senate as a Floor Amendment, but not as an amendment to the Clayton Act, and became Section 3 of the Robinson Bill (80 Cong. Rec. 6349).

The phraseology of the Borah-Van Nuys measure was unchanged from the time of its introduction to the time of its enactment. Its provision is almost identical in wording with the Canadian Price Discrimination Act, which is a part of the Canadian Criminal Code (25–26 Geo. V. Chap. 56 Section 9 (Canada 1935)).

The Patman Bill was passed by the House on May 28, 1936, and it and the Robinson-Patman Bill went to conference. The Conference Committee reported a revised draft on June 8, 1936, incorporating the Borah-Van Nuys amendment as Section 3.

The following excerpts from the Congressional Record show that Section 3 is a separate criminal statute, not to be construed in connection with other Sections of the Robinson-Patman Act, and not a part of the Anti-trust Laws:

Rep. Patman, co-author of the Robinson-Patman Act, in his testimony before a sub-committee of the House Judiciary Committee on May 10, 1950, stated that Section 3 was definitely not a part of the Clayton Act or of the Anti-trust Laws:

" * * * section 3 of the Robinson-Patman Act has never been added to the list of laws designated as 'antitrust laws' in section 1 of the Clayton Act.

" * * * the House did not put section 3 in that act, it was put in in the Senate, Senator Borah and Senator Van Nuys were the authors, it was put in and in conferences, to get a bill, we agreed for it to stay in. Since that time section 3 has not been carried as part of the antitrust laws. It should be. I hope that you will consider making it clear in this bill."

(Hearing on House H.R. 7905, Serial No. 14, Part 5, p. 48, 81st Cong., 2d sess.).

Rep. Miller, one of the conferees of the measure, stated as follows (80 Cong., Rec. 9421):

"Section 3, which the gentleman from New York talks about, is the Borah-Van Nuys amendment and that is the criminal section of this bill. * * * Section 3 in the bill is placed in an effort to make the criminal offense apply only to that particular section, and believe that is a reasonable construction, if you will look at the bill."

Rep. Miller further stated:

"Section 3 is the Borah-Van Nuys amendment. We accepted that amendment for this reason and this reason only. *The first section of the bill as reported back here amends section 2 of the Clayton Act.*" (Italics supplied.)

Rep. Miller, when asked whether Section 3 was "a part of the same act" as the part of the bill amending the Clayton Act replied (80 Cong.Rec. 9421):

"Of course it is, but it is not a part of the Clayton Act as amended by section 2 (Section 1 of the Robinson-Patman Bill)."

The Conference Committee report, House Report No. 2951, 74th Congress, 2d sess., p. 8 (80 Cong. Rec. pp. 9414–9415) states:

"\* \* \* Section 3 of the bill \* \* \* contains the operative and penal provisions of what was originally the Borah-Van Nuys bill (S. 4171). While they overlap in some respects, they are in no way inconsistent with the *provisions of the Clayton Act amendment provided for in section 1.*" (Italics supplied.)

Rep. Utterback, Chairman of the House Managers, stated as to Section 3, as follows (80 Cong.Rec. 9419):

"Section 3. Penal provisions. Section 3 of the bill sets aside certain practices therein described and attaches to their commission the criminal penalties of fine and imprisonment therein provided. It does not affect the scope or operation of the prohibitions or limitations laid down by *the Clayton Act amendment provided for in section 1.*" (Italics supplied.)

The distinction between Section 3 and Section 1 of the Act is further manifest by the conference committee report, which stated:

"Section 3 authorizes nothing which that amendment (Section 1 of the Robinson-Patman bill) prohibits and takes nothing from it. On the contrary, where only civil remedies and liabilities attach to violations of the amendment provided in section 1, section 3 sets up special prohibitions as to the particular offenses *therein* described and attaches to them also the criminal penalties *therein* provided." (Italics supplied.)

See H.Rep. No. 2951, 74th Cong. 2d sess. p. 8 (80 Cong.Rec. pp. 9414–9415).

In the form in which it was finally enacted the Robinson-Patman Act represents an amalgamation of a series of legislative proposals originating with the Patman bill introduced by Representative Patman on June 11, 1935 (79 Cong.Rec. 9081). Joint hearings were held beginning on July 10, 1935, and extending through the last session of the 74th Congress on the Patman bill and also on H.R. 4995 and H.R. 5062, introduced by Representative Mapes. Unable to reach a conclusion on the basis of its first hearings, the committee entrusted further hearings to a subcommittee headed by Representative Utterback. Prior to reconvening his subcommittee in February, 1936, Mr. Utterback had introduced his own bill (H.R. 10486), some features of which were ultimately incorporated in the Patman bill. On March 31, 1936, the House Committee favorably reported the Patman bill in considerably modified form.

Consideration in the Senate was somewhat less extended. On June 26, 1935, shortly after the introduction of the Patman bill in the House, Senator Robinson introduced an identical measure, S. 3154 (79 Cong.Rec. 10129), in the Senate. No hearings were ever held on this measure. On February 3, 1936, the Senate committee on the Judiciary favorably reported the Robinson bill with substantial amendments.

In the meantime on January 16, 1936, Senator Borah had introduced a bill, S. 3670, likewise designed to prohibit price discrimination (80 Cong.Rec. 461), and on January 30, 1936, Senator Van Nuys introduced a similar measure, S. 3835 (80 Cong.Rec. 1194). On March 4, Senators Borah and Van Nuys consolidated their bills in a single measure, S. 4171 (80 Cong.Rec. 3204), on which a subcommittee of the Senate committee on the judiciary held hearings. No report was ever made on these measures. In addition Senator Copeland had introduced two similar measures, S. 4024 and S. 4275. No committee action was taken on these. When the Robinson bill came to a vote in the Senate on April 23 and 24, the Borah-Van Nuys measure was attached to it as a floor amendment, but not as an amendment to the Clayton Act, and became Section 3 of the Robinson bill (80 Cong.Rec. 6349).

The Patman bill was passed by the House on May 28, 1936, and it and the Robinson bill went to conference. After a short conference, the conference com-

mittee reported a revised draft on June 8, 1936, incorporating the Borah-Van Nuys Amendment as Section 3. This revised draft was eventually enacted by Congress and approved by the President in the form hereinbefore set forth in Appendix "A" hereof, as extracted from 49 Stat. 1526.