Bruce A. MACKEY, Individually and Time Saver Tools, Inc., Plaintiffs-Appellants,

v.

SEARS, ROEBUCK & CO., Defendant-Appellee.

No. 11225.

United States Court of Appeals Seventh Circuit.

Nov. 1, 1956.

John Paul Stevens, Edward I. Roths-child, Chicago, Ill., for plaintiff-appellant, Rothschild, Hart, Stevens & Barry, Chicago, Ill., of counsel.

Leo H. Arnstein, Chicago, Ill., for appellee, Lederer, Livingston, Kahn & Adsit, Chicago, Ill., of counsel.

Before DUFFY, Chief Judge, and MAJOR and SWAIM, Circuit Judges.

DUFFY, Chief Judge.

The complaint herein containing six Counts was filed by two plaintiffs, Bruce A. Mackey, an individual, and Time Saver Tools, Inc., a corporation, which was wholly owned by Mackey. Hereinafter they shall be referred to as plaintiff.

The gist of the complaint is that since 1949 Sears has directed a course of predatory conduct successively at three business ventures carried on by plaintiff, namely, 1) by localized price cutting which destroyed plaintiff's nursery lamp business; 2) by the use of a threatened boycott, induced a breach of plaintiff's contract to sell on commission certain tools and other products of the Vascoloy-Ramet Corp., and 3) a destruction by Sears in 1952 of the market for a new type of tool by means of unfair competition. These general charges were distributed among the six Counts as follows: Count 1 alleges a deliberate and announced plan by Sears to destroy plaintiff's business activities, and asserts such plan is violative of §§ 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2, and of § 3 of the Robinson-Patman Act, 15 U.S.C.A. § 13a, and asks treble damages, § 15. In Count 2 plaintiff realleges the facts pertaining to the destruction of his business of selling nursery lamps, invokes the court's jurisdiction on the basis of diversity of citizenship, and asks for damages under the common law. Count 3 is a common law cause of action for inducing the breach of plaintiff's commission contract with Vascoloy-Ramet Corp. by means of a threatened boycott. Count 4 is a common law cause of action for unfair competition with plaintiff's tool business. Count 5 has been abandoned. Count 6 alleges defendant's entire predatory program and conduct was actionable under common law, under practically the same legal theory as Count 2.

On motion of the defendant the claims stated in Counts 1 and 2 were dismissed without leave to amend. The claims contained in Count 3 and in amended Count 4 are at issue in the District Court on the answer filed by Sears.

Plaintiff appealed from the order and judgment dismissing Counts 1 and 2 of the complaint without leave to amend. The defendant moved to dismiss the appeal on the ground that the order and judgment appealed from was not a final or appealable order under the requirements of § 1291, Title 28 U.S.Code. This Court, in 218 F.2d 295, held that the order was final and sustained its jurisdiction to entertain the appeal. The Supreme Court granted certiorari, and in Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 76 S.Ct. 895, the decision of this Court was affirmed.

The question before us on this appeal is whether the District Court was correct in holding that the facts alleged in Counts 1 and 2 of the complaint do not state, and could not be amended to state, a claim upon which relief can be granted.

The complaint alleged Mackey succeeded to the ownership of two "Metalcraft" corporations, since dissolved, which were engaged in the interstate business of making and selling nursery lamps; that Time Saver Tools, Inc., all of whose stock is owned by Mackey, was engaged in the interstate business of manufacturing and selling tools; that defendant Sears is the largest mail order company in the world and also operates over seven hundred retail stores, and that the annual sales of defendant exceed two billion nine hundred million dollars; that the "tremendous volume" of sales gives it the power to destroy the business and property of its small competitors and suppliers through the actual or threatened use of unreasonably low prices.

The complaint alleged Metalcraft began selling nursery lamps to Sears and others in 1945, but in 1946 Sears notified Metalcraft it would discontinue its purchases unless Metalcraft refrained from selling nursery lamps to competitors of Sears, and thereafter Metalcraft sold exclusively to Sears. It further alleged that in 1949 when Metalcraft was under contract to supply Sears with thirty thousand nursery lamps at a price of $2.20 per lamp, Sears instructed Mackey to cause Metalcraft to agree to a 20% reduction in price, and notified Mackey that if such reduction were refused, Sears would ruin Mackey and Metalcraft and make it impossible for Metalcraft to continue in business. The complaint then averred that Mackey refused to agree to such reduction, and Mackey then attempted to promote the sale of said lamps through the department stores in Milwaukee and Detroit, but that Sears, with the specific intent of making it impossible for Metalcraft to dispose of its product, sent substantial quantities of lamps which it had previously purchased from Metalcraft for $2.20 each to Milwaukee and Detroit, but not to comparable cities, to sell in its retail stores at 94 cents each; at the same time Sears listed these lamps in two of its catalogues at a price of 84 cents, and obtained a cheap imitation of Metalcraft's lamps which it misrepresented in its advertising as being lamps manufactured by plaintiff. The complaint avers that the purpose and intent of said sales below cost and such misrepresentation and unfair competition was to destroy the market for Metalcraft's products, and that Sears succeeded in such efforts.

The complaint further avers that about September 1, 1951, Mackey entered into a contract with Vascoloy-Ramet Corporation to promote the sale of tools and other products for which he was to be paid a commission of 5%. That after receiving commissions exceeding $5,000.00, Sears demanded that Vascoloy cease paying commissions to Mackey, and advised that unless its demands were complied with and the commission contract terminated, Sears would refuse to make further purchases from Vascoloy or its customers, and Vascoloy thereafter terminated such contract.

The complaint further averred that in April of 1951 Mackey invented a novel type of boring set for use with $1/4''$ electric drills, and that an application for a patent thereon was pending at the time the suit was commenced. In the spring of 1952 Mackey collaborated on the development of a new type of carbide-tipped lathe bit. Time Saver Tools, Inc. was formed to manufacture and sell said boring set, lathe bits and other tools, and national advertising was used to promote the sale of same, and said tools have become identified with Time Saver. The complaint further avers that in December, 1952, Sears purchased carbide-tipped lathe bits which were copies of the bits developed by Mackey, and that it packaged same in practically identical copies of plastic cases which had been used by Time Saver. There were further allegations asserting an attempt by Sears to palm off its product for those manufactured and sold by Time Saver. The com-

plaint then makes the general allegation that the acts and practices set forth in the complaint were performed pursuant to its continuing plan to destroy each and every business in which Mackey was engaged, or might attempt to engage, and that the purpose was to discipline small suppliers and small competitors of Sears so that they would accept any terms that might be dictated by Sears. The complaint charged that competition among persons who supply products of the kind Sears purchases for resale has thereby been unreasonably restrained.

Section 1 of the Sherman Act provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States * * *" is illegal. In the case at bar there is no contract in restraint of trade or commerce. No *per se* violation of the Act is alleged. Neither is there present the element of conspiracy as a single corporate entity cannot enter a conspiracy with itself. Nelson Radio & Supply Co., Inc., v. Motorola, Inc., 5 Cir., 200 F.2d 911, 914; Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 626, 73 S.Ct. 872, 97 L.Ed. 1277. We hold Count 1 of the complaint did not state a claim under § 1 of the Sherman Act. We do not think United States v. New York Great Atlantic & Pacific Tea Co., 7 Cir., 173 F.2d 79 is contra. The question there was whether a conspiracy charge would properly lie where separate and distinct corporate entities were controlled by interlocking directorates, and where various individual defendants were involved in joint activities.

Section 2 of the Sherman Act provides: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor * * *."

Section 2 thus outlaws three practices: 1) attempt to monopolize; 2) combination or conspiracy to monopolize and 3) monopolization. "In order to fall within § 2, the monopolist must have both the power to monopolize, and the intent to monopolize." United States v. Aluminum Co. of America, 2 Cir., 148 F.2d 416, 432.[1] The complaint herein does recite an intent by Sears to destroy any business in which the plaintiff might engage and thereby instill fear in its other suppliers, but that allegation cannot be twisted into a charge that Sears was attempting to monopolize the market in nursery lamps.

Furthermore, the complaint does not allege a dangerous probability that defendant may achieve a monopoly. Swift & Co. v. United States, 196 U.S. 375, 396, 25 S.Ct. 276, 49 L.Ed. 518; Lorain Journal Co. v. United States, 342 U.S. 143, 153, 72 S.Ct. 181, 96 L.Ed. 162. The allegation that Sears' total annual business exceeded Two Billion Nine Hundred Million Dollars gives no information as to Sears' volume in the nursery lamp business, either nationally or locally. As the trial court pointed out, there is no factual statement showing the alleged predatory practices have, to the slightest extent, lessened competition in the field of activity in which the plaintiff is engaged. We think the trial court stated the situation well in these words: " * * * The actions taken to ruin the plaintiff and discipline suppliers may be reprehensible but there is not the slightest showing of impending monopoly other than the bare assertion of the pleader." We hold Count 1 of the complaint did not state a claim under § 2 of the Sherman Act.

Section 3 of the Robinson-Patman Act, 15 U.S.C.A. § 13a, provides in part: "It shall be unlawful for any person engaged in commerce, in the course of such commerce, * * * to sell * * * goods in any part of the United States at prices lower than those exacted by said person elsewhere in the United States for the

---

1. This statement quoted and approved by the Supreme Court in American Tobacco Co. v. United States, 328 U.S. 781, 814, 66 S.Ct. 1125, 90 L.Ed. 1575.

purpose of destroying competition, or eliminating a competitor in such part of the United States; or, to sell * * * goods at unreasonably low prices for the purpose of destroying competition or eliminating a competitor."

The pertinent allegations of the complaint are, Sears sent lamps which it had purchased from Metalcraft to Milwaukee and Detroit, although not to other comparable cities, for sale below cost, and with the specific intent of making it impossible for Metalcraft to dispose of its products, and as a direct result of Sears' acts, Metalcraft became insolvent; (Par. 14). Sears induced suppliers of lathe-bits to sell the bits to Sears at prices lower than the prices charged Time Saver; (Par. 20). Sears sold tools in some parts of the United States at lower prices than elsewhere for the purpose of destroying competition from Mackey or Time Saver, (Par. 21).

■ Defendant Sears argues that unless defendant became a manufacturer of lamps or unless plaintiff became a retailer of merchandise, Section 3 of the Robinson-Patman Act does not apply. Sears insists that when the statute speaks of destroying competition and eliminating a competitor, it means that both parties must be in the same classification. Sears asserts a retailer's conduct cannot be actionable if it merely destroys competition among suppliers.

We think the statute contains no such "definition" as that described by Sears. This Court affirmed a recovery by the plaintiff—Exhibitor against the defendants—distributors in Milwaukee Towne Corporation v. Loew's, Inc., 7 Cir., 190 F.2d 561. The Supreme Court held that the conduct of the distillers which restrained competition among wholesalers was actionable under the Sherman Act; Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219. Furthermore, the complaint alleges Sears eliminated competition at the retail level for it interfered with the sale of plaintiff's lamps through department stores in Milwaukee and Detroit, and also imitated the packaging of plaintiff's tools in order to take advantage of Time Saver's national advertising and other promotional efforts. We think Sears' conduct as alleged in the complaint was unreasonably anti-competitive in both purpose and effect, and that a claim upon which relief can be granted is stated under Section 3 of the Robinson-Patman Act provided that a private cause of action can exist under that Section. Defendant does contend that private actions for treble damages are not maintainable under Section 3 of the Robinson-Patman Act. However, this important point is very lightly touched upon in the briefs.

■ There have been no Supreme Court or Court of Appeals decision on this point in any case where the issue was squarely raised and argued. There is, however, a conflict of authority in the District Courts. The leading case which holds such a cause of action does exist is Balian Ice Cream Co., Inc., v. Arden Farms Co., D.C.Cal.1950, 94 F.Supp. 796. The leading case to the contrary is Vance v. Safeway Stores, D.C.N.M.1956, 137 F.Supp. 841. However, this question is thoroughly examined and decided in the case of Nashville Milk Company v. Carnation Company, 7 Cir., 238 F.2d 86 in an opinion being filed simultaneously with this opinion. For the reasons therein stated, we hold that a private cause of action may not be maintained under Section 3 of the Robinson-Patman Act. It follows the trial court was correct in dismissing Count 1 of the complaint.

Count 2 of the complaint incorporates by reference the allegations of paragraphs 12, 13 and 14 of Count 1. It asserts diversity of citizenship, and plaintiff contends the facts set forth a common law cause of action.

■ Price cutting in and of itself has not been regarded as unlawful under the common law. Hershel California Fruit Products Co. v. Hunt Foods, Inc., D.C. Cal., 111 F.Supp. 732, 734; Schine Chain Theatres, Inc., v. United States, 334 U.S. 110, 120, 68 S.Ct. 947, 92 L.Ed. 1245. But there are well established exceptions to the rule as where price cutting has been combined with acts of unfair compe-

tition such as false or misleading advertising and also where it can be inferred the price cutter was motivated by malice. See Nims Unfair Competition and Trademarks, 4th Ed. Vol. II, Sec. 300, p. 975.

We think the complaint sufficiently alleges intentional destruction of plaintiff's business without justifiable excuse and based upon malice or ill-will. This constitutes a cause of action under the common law. Original Ballet Russe v. Ballet Theatre, 2 Cir., 133 F.2d 187, 189. See also, Boggs v. Duncan-Schell Furniture Co., 163 Iowa 106, 143 N.W. 482, 486, L.R.A.1915B, 1196. The Iowa court quoted from the opinion in Doremus v. Hennessey, 176 Ill. 608, 615, 52 N.E. 924, 926, 54 N.E. 524, 43 L.R.A. 797: " ' * * * an act maliciously done, with the intent and purpose of injuring another, is not lawful competition.' "

The trial court was in error in dismissing Count 2 of the complaint.

This cause is remanded for proceedings in conformity with this opinion.

Affirmed in part, reversed in part, and remanded. Costs of this appeal to be divided equally between the parties.