**NASHVILLE MILK COMPANY,**
Plaintiff-Appellant,

v.

**CARNATION COMPANY, Defendant-Appellee.**
No. 11820.

United States Court of Appeals
Seventh Circuit.
Nov. 1, 1956.

Jerome F. Dixon, Karl Edwin Seyfarth, Benton Atwood, Chicago, Ill., Edward M. Sullivan, Amboy, Ill., Sherwood Dixon, Chicago, Ill., for plaintiff-appellant.

Melville C. Williams, Thomas C. Strachan, Jr., Frank F. Fowle, Willis S. Ryza, Chicago, Ill., for defendant-appellee.

Before DUFFY, Chief Judge, and MAJOR and SCHNACKENBERG, Circuit Judges.

DUFFY, Chief Judge.

This is an appeal from an order dismissing the complaint herein before trial. This action was brought under § 3 of the Robinson-Patman Act, § 13a, Title 15 U.S.C.A. Plaintiff sought to recover treble damages and asked injunctive relief claiming defendant had sold filled milk at unreasonably low prices for the purpose of destroying competition by plaintiff in its sale of a like product.

Plaintiff is an Illinois corporation, and since April, 1951, has manufactured and sold filled milk within the State of Illinois where such manufacture and sale is legal under the laws of Illinois. Defendant is a Delaware corporation which owns and operates some 30 factories in 20 states for the processing of milk.

Since May, 1952, defendant has manufactured filled milk at its factory located at Morrison, Illinois. For the purpose of manufacturing filled milk defendant has transported or caused to be transported into Illinois whole milk from the State of Wisconsin, and vegetable oils from various points outside of Illinois. The filled milk manufactured by Carnation has been marketed under the name "Topic" while plaintiff's filled milk product was marketed under the name "Rich Whip".

Defendant moved to dismiss the complaint on four grounds. 1) The Robinson-Patman Act does not protect a busi-

ness engaged in making and selling a product banned by Congress from the channels of interstate commerce; 2) The complaint fails to allege that any sales of filled milk by either plaintiff or defendant were in the course of interstate commerce; 3) The complaint fails to allege that the manufacture of filled milk by the defendant was in the course of interstate commerce, and 4) A private action may not be maintained for an alleged violation of § 3 of the Robinson-Patman Act.

The District Court dismissed the complaint for the reason that no relief should be accorded to the plaintiff in view of the declared congressional policy relative to filled milk as announced in 21 U.S.C.A. § 62 which proscribes the shipment or delivery for shipment of filled milk in interstate commerce.

■ The decision of the District Court must be affirmed if the order of dismissal can be sustained on any of the grounds urged by defendant in support of its motion to dismiss. Gallagher & Speck, Inc., v. Ford Motor Co., 7 Cir., 226 F.2d 728, 731. Inasmuch as we are convinced that a private action may not be maintained for a violation of § 3 of the Robinson-Patman Act, we shall not discuss the other grounds urged by the defendant.

The Supreme Court has not ruled upon this question[1] and as far as we are advised, there has been no direct decision on the point by any Court of Appeals. There is, however, a direct conflict of authority in the District Courts. The leading case which holds that such a cause of action does exist is Balian Ice Cream Co., Inc., v. Arden Farms Co., D.C.Cal.1950, 94 F.Supp. 796. The leading case to the contrary is Vance v. Safeway Stores, D.C.N.M.1956, 137 F. Supp. 841. In the Vance case Judge Rogers carefully considered the decision

in the Balian Ice Cream case and reached the conclusion that it was wrongly decided.

■ Plaintiff has no right to sue for treble damages or injunctive relief unless a federal statute has created that right. Sun Theatre Corp. v. RKO Radio Pictures, Inc., 7 Cir., 213 F.2d 284, 286; Paine Lumber Company, Ltd. v. Neal, 244 U.S. 459, 471, 37 S.Ct. 718, 61 L.Ed. 1256. The only statutes upon which the plaintiff could possibly rely are sections 4 and 16 of the Clayton Act, 15 U.S.C.A. §§ 15, 26; Section 4 provides that any person injured in his business or property by reason of anything forbidden by the "antitrust laws" may recover treble damages. Section 16 authorizes private suits for injunctive relief against threatened damage by a violation of the "antitrust laws."

The Clayton Act, 38 Stats. 730, 15 U.S.C.A. § 12 et seq., defines the term "antitrust laws" and states precisely what that term means as it is used throughout the Act. Section 1 of the Clayton Act defines "antitrust laws" to mean the Sherman Act, Act of July 2, 1890, 15 U.S.C.A. §§ 1–7, 15 note, the Wilson Tariff Act, Act of August 27, 1894, the Act amending the Wilson Tariff Act, Act of February 12, 1913, 15 U.S.C.A. §§ 8–11, and the Clayton Act itself.

It is quite apparent that confusion has arisen as to whether section 3 of the Robinson-Patman Act is an "antitrust law" within section 1 of the Clayton Act because of an error in codification in the 1940 U.S.Code. In the 1926 U.S.Code, section 1 of the Clayton Act was codified (15 U.S.C. § 12) to read: " 'Antitrust laws' as used in sections 12–27 of this title (Title 15) includes sections 1–27 of this title." This was correct because sections 1–27 of Title 15 were the Sherman Act, the Wilson Tariff Act (as

1. Section 3 has been referred to in Supreme Court dicta as though it were a statute under which a private suit for treble damages could be maintained. Bruce's Juices, Inc., v. American Can Co., 330 U.S. 743, 750, 67 S.Ct. 1015,

91 L.Ed. 1219, and Moore v. Mead's Fine Bread Co., 348 U.S. 115, 117, 75 S.Ct. 148, 99 L.Ed. 145. However, in neither of these cases was the private right to sue under Section 3 in issue.

amended) and the Clayton Act. The 1934 Code was the same.

However, in the 1940 Code which followed the passage of the Robinson-Patman Act in 1936, the codifiers only partially recognized that sections 2, 3 and 4 of the Robinson-Patman Act (codified as 15 U.S.C. § 21a, § 13a and § 13b) were no part of the Clayton Act or any amendments to any of its sections by changing the figures "12–27" in 15 U.S. C. § 12 (the codification of section 1 of the Clayton Act) to "12, 13, 14–21, 22–27," so that the statute read: " 'Antitrust laws' as used in Secs. 12, 13, 14–21 and 22–27 of this title includes secs. 1–27 of this title." But the codifiers failed to make a corresponding change in the figures 1–27 with the result upon casual inspection the term "antitrust laws" might seem to include secs. 2, 3 and 4 of the Robinson-Patman Act. The 1946 and 1952 Codes continued the error.

▮ However, the United States Code is only prima facie evidence of the laws of the United States. In case of inconsistencies between the code and the corresponding legislation theretofore enacted, effect is to be given to the enactments themselves. 1 U.S.C.A. p. 4; Stephan v. United States, 319 U.S. 423, 426, 63 S.Ct. 1135, 87 L.Ed. 1490.

Because section 1 of the Robinson-Patman Act is without question an amendment of the Clayton Act, it has been argued that section 3 is also such an amendment. A close examination of the text of the Robinson-Patman Act and of its legislative history convinces us that section 3 is not an amendment of the Clayton Act.

The first section of the Robinson-Patman Act begins with this statement: "Be it enacted * * * That section 2 of [the Clayton Act] is amended to read as follows". No such statement appears at the beginning of sections 2, 3 or 4 of the Robinson-Patman Act. These sections do not purport to amend as section 1 specifically did.

Immediately following the enacting clause, section 1 continues with the text of subsections (a) through (f) each subject being enclosed in quotation marks so as to show how the amended section 2 of the Clayton Act is to read. There are no quotation marks enclosing any of the remaining sections. This omission of quotation marks is significant to one who is accustomed with the procedures used in drafting bills and amendments thereto in the Congress of the United States. Illustrations of the practice of enclosing in quotation marks that portion of the bill which amended other laws can be seen in such legislation as Chapter 634, 49 Stat. 1555, 16 U.S.C.A. § 703 et seq., relating to the Migratory Bird Act; Chapter 811, 49 Stat. 1925, relating to Naturalization Laws and Chapter 816, 49 Stat. 1930, 46 U.S.C.A. § 672 et seq., relating to Welfare of American Seamen, in each of which quotation marks enclose the portions of those bills which amended existing law while quotation marks were omitted for those portions of the bills which were not amendments.

The legislative history is convincing that there was no intention by Congress for section 3 of the Robinson-Patman Act to be an amendment of the Clayton Act. Senator Robinson and Representative Patman had introduced their bills in the Senate and House, respectively. About eight months later a bill known as the Borah-Van Nuys Bill was introduced into the Senate. This provided for a criminal statute. Later, the Borah-Van Nuys Bill was attached to the Robinson Bill in the senate by a floor amendment. The phraseology of the Borah-Van Nuys measure remained unchanged until its enactment as section 3 of the Robinson-Patman Act.

After the passage of the Patman bill in the House and the Robinson bill in the Senate, these bills went to a conference. The Conference Committee reported a revised draft on June 15, 1936 which incorporated the Borah-Van Nuys measure as section 3 (80 Cong.Rec. 9414). The report of the Conference Committee (80 Cong.Rec. 9414, 9902) expressly stated that only section 1 was

an amendment of the Clayton Act. The report stated:

"Section 2.

"The provisions of Section 2 of the House bill were agreed to without amendment by the Senate. Relating only to pending rights of action and proceedings, and being therefore temporary in purpose, it appears in the conference report as section 2 of the bill itself, rather than as part of *the amendment to section 2 of the Clayton Act, which is provided for in section 1 of the present Bill.*" (Emphasis supplied)

"Section 3.

"Subsection (h) of the Senate amendment, which was not contained in the House bill, was accepted by the House conferees, and * * * appears in the conference report as section 3 of the bill itself. It contains the operative and penal provisions of what was originally the Borah-Van Nuys Bill (S. 4171). *While they overlap in some respects,* they are in no way inconsistent with the *provisions of the Clayton Act amendment provided for in section 1.*" (Emphasis supplied)

Representative Utterback, Chairman of the House Members of the Joint Conference Committee, stated in his report to the House (80 Cong.Rec. 9419): "Section 3 of the bill sets aside certain practices therein described and attaches to their commission the criminal penalties of fine and imprisonment therein provided. It does not affect the scope or operation of the prohibitions or limitations laid down by *the Clayton Act amendment provided for in section 1.*" (Emphasis supplied.)

Representative Miller, one of the House conferees of the Joint Conference Committee, stated (80 Cong.Rec. 9421): "Section 3 is the Borah-Van Nuys amendment. We accepted that amendment for this reason and this reason only. The first section of the bill as reported back here *amends section 2 of the Clayton Act.*" Mr. Miller, when asked whether section 3 was "a part of the same act" as the part of the bill amending the Clayton Act replied (80 Cong. Rec. 9421): "Of course it is, *but it is not a part of the Clayton Act * * *.*" (Emphasis supplied.)

Writers of law articles on the subject here for decision have taken the position that no action may be maintained for treble damages under section 3 of the Robinson-Patman Act. 50 Harvard Law Review, 106, 121–122; 85 University of Pennsylvania Law Review, 306, 312; 22 Washington Law Quarterly, 153, 159, 182; 22 American Bar Association Journal, 593, 649.

The Attorney General's National Committee to Study the Antitrust Laws said, on page 201 of its report of March 31, 1955:

"We believe that acceptance of section 3 as a basis for private treble damage litigation involves highly dubious statutory construction and, more important, finds support neither in the legislative intent nor overall antitrust policy. Hence, at the least, any authority to enforce Section 3 should be restricted to responsible officials of the United States. Such drastic legislation threatening common and competitive pricing practices with the risk of criminality, if tolerated at all should be accessible only to the government which has already sought to limit its application."

■ As we have reached the conclusion that a private action may not be maintained for a violation of Section 3 of the Robinson-Patman Act, it follows that the District Court was correct in dismissing the complaint and the order and judgment of dismissal must be and is

Affirmed.